**GLOBAL COMMERCE CORPORATION,**
S. A., Appellant,

v.

**CLARK–BABBITT INDUSTRIES, Inc.,**
Appellee.

No. 272, Docket 24794.

United States Court of Appeals
Second Circuit.

Argued March 26, 1958.

Decided April 29, 1958.

Walter Herzfeld, New York City, Sereni & Herzfeld, New York City, Bernard J. Wald, New York City, of counsel, for appellant.

Francis A. Brick, Jr., New York City, Donovan Leisure Newton & Irvine, New York City, Douglas V. Lewis, New York City, of counsel, for appellee.

Before CLARK, Chief Judge, HAND, Circuit Judge, and DIMOCK, District Judge.

HAND, Circuit Judge.

■ This appeal is from a judgment for the defendant entered after a trial to Judge Walsh without a jury, upon our remand after the reversal of a former judgment which is reported in 239 F.2d 716. We then held that, although we might well have affirmed the judgment for the defendant so far as it was based upon the evidence of what had occurred between the parties up to and including September 24, 1946, it was erroneous not to consider what happened thereafter and we remanded the case for a retrial. It now comes before us again upon Judge Walsh's dismissal at the close of the plaintiff's evidence, and the first issue that we need consider is whether it was "clearly erroneous" to find that the parties never reached an agreement upon either of the proposed contracts.

We assume an acquaintance with the general situation as it is disclosed in our former opinion, and shall begin with Klein's offer of September 13, 1946, to Meyers, in answer to Meyers's wire of the 12th. To this offer Meyers wired an answer of the 16th which did not reveal that he was acting as an agent for the defendant. However, on the same day the defendant, through Thomas, its authorized "Director," wrote to Klein, telling him that Meyers was the defendant's "Export Consultant and that for the future on any and all matters pertaining to the products hereinafter referred to, are" (sic) "to be specifically directed to the attention of the undersigned. On matters, of course, not allied with this organization please refer to Mr. Meyers directly." Both the copra, and the "steel bars," transactions were "referred to" in this letter, which Klein received on the 20th, and there cannot therefore be any doubt that no contract between Klein and Meyers made after its receipt would have bound the defendant. Moreover, even though we might agree with Judge Walsh's finding that "at this point" (September 19) "we have the completion of Klein's and Meyers' negotiations," no agreement between them would in any event have bound the defendant, for Klein declared in his letter of the same day that "we have taken due notice of your information that the deal has to be concluded with Clark-Babbitt Industries in New York."

Assuming, however, that Thomas's letter of the 16th was an offer which Klein could accept, not only did he not do so, but by his answer of the 20th he refused it, because he made it a condition that the defendant should give a "performance bond." Indeed, it is clear that even as to the amount of such a bond he was equivocal. He had cabled that it should be 10% and in his letter he put it first at 5% and later at 10%. On the next day in a letter of curious ambiguity, he threw the whole negotiation into further confusion by saying "we assume that it will be possible to negotiate the deal with only 5% performance bond instead of 10%, as has been requested, but it would not be possible to get a letter of credit opened without at least a 5% perform-

ance bond." His cable of the 23rd still insisted upon such a bond; yet on the 25th he cabled: "Your firm offer 10000 tons copra, 5000 tons steel bars have been firmly accepted and both items firmly sold" and then added "in spite agreed upon performance bond will open L. C. without bond." His assertions in the cable he repeated at length in his letter of the 25th; and, after a telephone talk with Thomas on the 25th, he declared by letter on the next day that they had come to a "decision to arrange now for deliveries of copra and steel bars, without unnecessary delays." This concludes the documentary evidence before Klein met Thomas in New York, and except as Klein's testimony supplemented it, it did not prove the contracts in suit.

Klein was the only witness called to prove the making of any contract and in a very long analysis of his testimony, based upon his appearance when checked against the written evidence, Judge Walsh found that his version of what had taken place either by telephone, or at personal interviews with Thomas was "not sufficiently convincing to me to overcome the doubts with respect to it which I find in the pattern of the parties as outlined in the correspondence, and indeed in Klein's testimony itself." He carefully avoided saying that he thought that Klein had deliberately fabricated any part of his testimony; but he thought Klein's recollection "* * * had an artificial aspect" that "didn't give me the ring of two businessmen talking. I got the feeling of fragments fitted into an outline which Klein thought to be the structure of the case." "I don't feel that I can hold the defendant upon such testimony even while uncontradicted. So I don't think that the plaintiff has met the burden of proof." These statements Judge Walsh accompanied by an unusually detailed analysis of the correspondence, from which he found their confirmation. The plaintiff seems to suppose that if upon review we do not agree with the inferences drawn, we should reverse the ultimate finding; but any such course would involve disregarding

those parts of the evidence that so often are determinative, and that no printed record can ever preserve. Again and again we have said that, except on most exceptional occasions, this prevents us from reviewing a finding based upon oral testimony.

The plaintiff relies upon the decision of the Fifth Circuit in Benton v. Blair, 228 F.2d 55, where the court reversed a finding of the district court that the parties had not reached an oral agreement. The district judge gave as his reason for directing judgment the unlikelihood that in a two hour talk at their first meeting the parties had made "an oral contract of the terms and tenor that the plaintiff contends for." However, there was much written evidence, part of which indicated that the defendant recognized the existence of the agreement, and we cannot know how far this may have influenced the reversal. In any event the situation there before the court was altogether different from that at bar. Moreover, although the plaintiff fervently urges upon us the error of not accepting Klein's testimony, we can only reply that Judge Walsh's doubt as to its truth was amply justified, and that for ourselves, we are a little surprised at the moderation with which he expressed himself. The correspondence not only shows the contradictions we have mentioned, but in its latter parts contains such a totally unwarranted iteration that the parties had come to an agreement, when they plainly had not done so, that it inevitably throws doubt upon the testimony as a whole.

■ It is scarcely necessary in conclusion to say that the plaintiff may not complain that Judge Walsh disposed of the case without hearing the witnesses for the defendant, and so deprived the plaintiff "of the opportunity to strengthen its presentation by cross-examination of defendant's witnesses or in the alternative by inferences from their failure to take the stand." We cannot understand upon what possible ground the defendant can suppose that the third sentence of Fed.Rules Civ.Proc. Rule 41

(b) 28 U.S.C.A. does not flatly contradict this argument.[1] If the plaintiff had wished to secure any evidence from Thomas, Meyers or any other of the defendant's employees, it should have called them to the stand, in which event it would not have been limited in its cross-examination—Rule 43(b).

Judgment affirmed.

1. Blood v. City of New York, 2 Cir., 237 F.2d 855.