166 So.2d 711 (1964)
TAMPA WHOLESALE CO., a Florida corporation, Appellant,
v.
FOODTOWN, U.S.A., INC., a Florida corporation, Appellee.
No. 4189.
District Court of Appeal of Florida. Second District.
July 17, 1964.
Rehearing Denied August 18, 1964.
Martin D. Kahn, North Miami, for appellant.
No appearance for appellee.
*712 ANDREWS, Judge.
The plaintiff appeals a Chancellor's determination that it had failed to show any right to have the appellee enjoined from using a trade name identical to its own.
The appellant began using the name "KASH N' KARRY WHOLESALE SUPER MARKETS" in the operation of its chain of supermarkets in the Tampa Area. The appellee then began using the same name in the operation of its food store in Fort Lauderdale. The appellant brought suit to enjoin this use on the ground of unfair competition.
There was no evidence that the name had acquired a secondary meaning in the Fort Lauderdale area through the appellant's use or that there was, as yet, any actual competition between the parties. While the appellee began using the name with actual knowledge of the appellant's prior use, there was no indication that it did so for the purpose of forestalling the expansion of the appellant's business or otherwise harming it. Consequently, the question before the Court was whether there was a reasonable probability, as distinguished from a mere possibility, that the appellant's business would expand into the Fort Lauderdale area when the appellee began using the name. The Chancellor resolved this issue against the appellant by dismissing its action with prejudice after it had completed the presentation of its evidence.
The judgment appealed was entered pursuant to Rule 1.35(b) of the 1954 Rules of Civil Procedure, 30 F.S.A., which provides, among other things, for dismissal after the plaintiff has completed the presentation of its evidence. Judgment of dismissal is authorized to be entered where, upon the facts and the law, the plaintiff has shown no right to relief.
For the purpose of the appeal, the appellant urges us to deem as admitted all inferences in its favor which may reasonably be found from the evidence. This procedure, applicable on appeals from directed verdicts in cases tried by jury, cannot be adopted here. To do so would render negatory the following sentence in Rule 1.35(b): "In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."
This above-quoted portion of Rule 1.35 (b) apparently has been overlooked in several decisions, which contain language supporting the appellant's position. See McKee v. Fairmont Homes, Inc., Fla.App. 1963, 155 So.2d 733; Nelson v. Cranero Constructors, Inc., Fla.App. 1960, 117 So.2d 764; and In re Mollard's Estate, Fla.App. 1957, 101 So.2d 880. The Court took special note of this part of Rule 1.35(b) in Janczewski v. Janczewski, Fla.App. 1959, 114 So.2d 428, and noted that it came from Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. However, the Court in that case had no occasion to point out how this type of motion for dismissal differs from a motion for directed verdict in a case tried by jury.
The distinction between dismissals under Rule 1.35(b) and directed verdicts in jury trials is clearly stated in United States v. Continental Can Company, D.C.S.D.N.Y. 1963, 217 F. Supp. 761, 766, app'l pend'g. 375 U.S. 893, 84 S.Ct. 173, 11 L.Ed.2d 123.
Where, as here, the trial court, sitting without a jury, determines the facts from the plaintiff's evidence and concludes that, upon the facts and the law, the plaintiff has shown no right to relief, its order dismissing a plaintiff's cause should be affirmed, unless "clearly erroneous." Global Commerce Corporation v. Clark-Babbitt Industries, Inc., 2 Cir.1958, 255 F.2d 105. Stated differently, the only question properly before us on this appeal is whether the evidence supports the Chancellor's finding that, when the appellee began using the trade name in question, there was merely a possibility, and not a reasonable probability, that the appellant's business would expand *713 into the Fort Lauderdale area. Blood v. City of New York, 2 Cir.1956, 237 F.2d 855.
Prior to February 1962 the appellant had been operating nine stores at or near Tampa under the name "Big Barn Food Stores." In February 1962 the appellant gradually began to change the names of its existing stores, as well as those of newly acquired or developed stores, to "KASH N' KARRY WHOLESALE SUPER MARKETS." By the end of 1962 the appellant was operating thirteen stores under the "KASH N' KARRY" name in Tampa, Plant City, Dade City and Palmetto. Eleven were located in Hillsborough County and one each in Pasco and Manatee Counties. At that time the appellant had a warehouse facility at Tampa which was adequate to service several additional stores. In October or November 1962 the appellee's president, whose Fort Lauderdale store was then being operated under the name "FOODTOWN, U.S.A.," came to Tampa and inquired about the appellant's operation. He stated that his store was not doing very well and that he liked the appellant's name because it was "catchy." His requests for permission to use it were declined on the ground that the appellant planned to expand. Toward the end of 1962 the appellee changed the name of its Fort Lauderdale store to "KASH N' KARRY WHOLESALE SUPER MARKETS." The appellant's suit for an injunction was instituted on January 22, 1963, and came on for final hearing on May 29, 1963.
At the final hearing, officers of the appellant testified that it was then negotiating for six additional stores located in Lakeland, Plant City, West Palm Beach, St. Petersburg, Tampa and Miami; also, that it was then constructing an addition to its warehouse facility which would enable it to "come close" to doubling the number of its stores. The appellant had no formal planning department, no market or research studies and no written records disclosing the nature or area of its planned expansion. The evidence failed to disclose when the negotiations for the various proposed new stores had begun. None had been going on for more than six months. As to the Lakeland and Plant City stores, there was testimony that the appellant was "awfully close and subject to closing those any day." The appellant's "final offer" on the Tampa and Miami stores, which were available as a "package" from a single interest, had been made about six weeks previously. Negotiations for the West Palm Beach store had been interrupted by Chapter 11 proceedings. Negotiations for the St. Petersburg store had started only the week of the final hearing. The appellant's evidence also failed to disclose when the warehouse addition had been decided upon. The witness asked this question answered equivocally: "We have been deciding that ever since we took in the thirteen stores." As to the construction of the warehouse addition, there was testimony that the "steel" was going up at the time of the hearing.
The appellant's officers testified generally that they knew they were going to get the stores under negotiation and that the prospect of actual competition looked "pretty sure." However, as one of them pointed out, the acquisition of only a single store at a distant point would not be economical. If they acquired one store at a city, such as Jacksonville, they would want from four to seven stores in that area to share the overhead of employing a supervisor, a meat supervisor, and a produce supervisor. This testimony and the absence of any reasonably specific plans for expansion into any particular geographic area help to explain the Chancellor's reluctance to share completely the optimism about expansion and the concern about actual competition, which was exhibited by the appellant's officers.
The appellant also placed considerable emphasis on the fact that the form and content of the appellee's advertising had a striking resemblance to the advertising of the appellant. However, there was no showing that such advertising in any way *714 adversely affected appellant's business, or in any way constituted unfair competition.
In short, the evidence supported an injunction if all reasonable inferences were taken favorably to the appellant. However, it was not so strong as to require or compel the fact-finder necessarily to conclude from all the circumstances that actual competition was not merely a possibility, but was a reasonable probability when the appellee began using the name.
Safeway Stores v. Sklar, D.C.E.D.Pa. 1947, 75 F. Supp. 98, chiefly relied on by the appellant, contains language strongly supporting its right to an injunction. However, that case may be distinguished on the ground that one purpose of the defendant there was to capitalize on the business and credit reputation of the plaintiff so that he could buy a large allotment of supplies from wholesalers during a period when food products were difficult to obtain in large quantities. As the court remarked, this "created a situation the reasonable likelihood of which [was] to cause injury to the plaintiff's credit and financial standing, or reputation for integrity and fair dealing."
In the case before us there was no indication of any specific design on the part of the appellee inimical to the appellant's interest. Food Fair Stores, Inc. v. Food Fair, Inc., D.C.D.Mass. 1948, 83 F. Supp. 445, aff'd. 4 Cir.1949, 177 F.2d 177, and Food Fair Stores, Inc. v. Lakeland Grocery Corp., 4 Cir.1962, 301 F.2d 156, also are distinguishable on the ground, among others, that the plaintiff there established more than a mere hope or possibility of doing business in the area where the defendant sought to operate. Other relevant cases are collected, among others, in the following texts: 3 Callman, Unfair Competition and Trade-Marks (2d Edition) § 76.3; Annotation, 148 A.L.R. 12; 52 Am. Jur., Trade-Marks, etc., § 112; 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 109.
The cases disclose a tendency to relax in recent years the former requirement that actual competition ordinarily must be shown in order to obtain relief for alleged unfair competition. However, no easy rule has been found to determine the territory in which protection will be afforded. This can properly be determined only by weighing all of the facts and circumstances and the inferences which may be reasonably drawn from the evidence. The determination is largely a factual one and should not be disturbed on appeal unless clearly erroneous. Since the evidence in this case supports the Chancellor's determination of that issue, the order appealed must be affirmed.
Affirmed.
SMITH, C.J., and WILLIAMS, VOLIE A., Jr., Associate Judge, concur.