PETER KATRIS, Indiv. and in a Derivative Capacity on Behalf of Viper Execution Systems, L.L.C., Plaintiff-Appellant, v. PATRICK CARROLL *et al.*, Defendants-Appellees (Stephen Doherty *et al.*, Defendants).

First District (6th Division)   No. 1—04—3639

Opinion filed December 23, 2005.

William P. Suriano, of Law Offices of William P. Suriano, of Riverside, for appellant.

Steven M. Malina and Beth A. Black, both of Morgan, Lewis & Bockius, L.L.P., of Chicago, for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

This case concerns the applicability of fiduciary duties to a member of a manager-managed limited liability company under the Illinois Limited Liability Company Act (805 ILCS 180/1—1 *et seq.* (West 2002)) (Act). Plaintiff-appellant Peter Katris, individually and in a derivative capacity on behalf of Viper Execution Systems, L.L.C. (the LLC), asserted a cause of action for collusion against defendants-appellees Patrick Carroll and Ernst & Company (Ernst). Katris, a manager of the LLC, contended that Carroll and Ernst colluded with a member of

the LLC in the member's breach of his fiduciary duties to Katris and the LLC. The circuit court of Cook County granted summary judgment in favor of Carroll and Ernst, finding that the LLC member did not owe the LLC or Katris any fiduciary duty.

In affirming the circuit court's grant of summary judgment, we follow the plain meaning of section 15—3(g)(3) of the Act. 805 ILCS 180/15—3(g)(3) (West 2002). This section imposes fiduciary duties only on a member of a manager-managed limited liability company who exercises some or all of the authority of a manager pursuant to the operating agreement. 805 ILCS 180/15—3(g)(3) (West 2002). The facts in this case showed that the member did not exercise any such authority pursuant to the operating agreement. Accordingly, the member did not owe any fiduciary duties, and, as a result, the collusion claim fails and summary judgment was proper.

## BACKGROUND

In the early to mid-1990s, Stephen Doherty wrote a software program called "Viper" for Lester Szlendak. Subsequently, Katris and William Hamburg, both Ernst employees, expressed interest in Viper, and on February 14, 1997, they joined Szlendak and Doherty in forming the LLC to exploit the capabilities of the software. On that date, they filed the LLC's articles of organization with the Secretary of State. In it, they indicated that management of the LLC was vested in its managers, Katris and Hamburg, and not retained by its members.

Pursuant to the LLC's operating agreement, signed by the four members on February 14, 1997, each member held a 25% interest, and as a condition of the operating agreement, Szlendak and Doherty assigned their rights, interest and title to Viper to the LLC. The operating agreement provided that the "business and affairs of the [LLC] shall be managed by its [m]anagers" and that the members agreed to elect Katris and Hamburg as the "sole [m]anagers" of the LLC. The operating agreement also enumerated the powers of the managers and set forth the rights and obligations of the members. However, none of the provisions setting forth the rights and obligations of the members provided the members with any managerial authority. Pursuant to its terms, the operating agreement could "not be amended except by the affirmative vote of [m]embers holding a majority of the [p]articipating [p]ercentages."

Also on February 14, 1997, Katris and Hamburg, as managers of the LLC, prepared a written consent adopting certain resolutions in lieu of holding an initial meeting of the managers. They resolved, *inter alia*, to adopt the operating agreement dated February 14, 1997, as the operating agreement of the LLC and to elect the following:

Hamburg as chief executive officer, Katris as chief financial officer, Szlendak as director of marketing, and Doherty as director of technical services. The written consent contained signature lines for Hamburg and Katris, who were identified as "all of the [m]anagers" of the LLC.

Prior to and at the time of the LLC's formation, Doherty worked as an independent contractor for Hamburg and Carroll (also an Ernst employee); however, in late 1997, Ernst hired Doherty to work for Carroll. As part of his duties for Carroll, Doherty worked with a programmer hired by Ernst to adapt a software program ultimately called "Worldwide Options Web (WWOW)."

Katris initiated this action on January 16, 2002, and ultimately asserted a breach of fiduciary duty claim against Doherty and a claim for collusion against Doherty, Carroll and Ernst. He alleged that WWOW was functionally similar to Viper and contended that Doherty usurped a corporate opportunity of the LLC by working in secret with Carroll and the programmer hired by Ernst to develop competing software for Ernst. He further contended that Carroll and Ernst colluded with Doherty in the breach of Doherty's fiduciary duties to the LLC.

Doherty subsequently settled with Katris, providing Katris with an affidavit setting forth his involvement in the case in exchange for his dismissal. As a result of Doherty's dismissal from the case, only Katris' claim for collusion against defendants-appellees Carroll and Ernst remained.

Carroll and Ernst filed a motion for summary judgment asserting, *inter alia*, that Katris' collusion claim failed because Doherty, as a nonmanager member of the manager-managed LLC, did not owe Katris or the LLC a fiduciary duty under section 15—3(g) of the Act (805 ILCS 180/15—3(g) (West 2002)), and thus they could not collude with Doherty to breach a fiduciary duty under that section.

In response, Katris filed an affidavit attaching the February 14, 1997, written consent. Katris stated that the written consent constituted an amendment to the operating agreement and that, pursuant to the terms of that amendment, Doherty was named "Director of Technology" and "given the sole management responsibility for developing, writing, revising and implementing the Viper software." According to Katris' affidavit, Doherty "was in charge of adapting the software to route options orders, in addition to stock orders," and the "LLC relied on him totally to develop the Viper software." Katris contended that pursuant to section 15—3(g)(3) of the Act (805 ILCS 180/15—3(g)(3) (West 2002)), Doherty was thus subject to the standards of conduct imposed upon managers under the Act and

breached those duties by usurping a corporate opportunity belonging to the LLC.

On October 1, 2004, the circuit court entered an order granting Carroll and Ernst's motion for summary judgment. The court subsequently denied Katris' motion for reconsideration, and this appeal follows.

## ANALYSIS

In this appeal, Katris contends that the trial court erred in granting summary judgment on his collusion claim against Carroll and Ernst. We review the circuit court's grant of summary judgment *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). Summary judgment is appropriate where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

Here, Katris asserted a cause of action for collusion against Carroll and Ernst. He contended that Carroll and Ernst colluded with Doherty in breaching Doherty's fiduciary duty to Katris and the LLC. Accordingly, Katris' claim against Carroll and Ernst depended upon a finding that Doherty owed Katris and the LLC a fiduciary duty. *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 564-65 (1980). In this appeal, Katris contends that summary judgment was improper because Doherty owed Katris and the LLC such a fiduciary duty.

We look to the applicable provisions of the Act in determining the fiduciary duties owed by the managers and members of the LLC. *Anest v. Audino*, 332 Ill. App. 3d 468, 475-76 (2002); see also *Harbison v. Strickland*, 900 So. 2d 385, 389 (Ala. 2004) ("Like corporations and limited partnerships, limited liability companies are creatures of statute"). The parties here agree that section 15—3(g) of the Act (805 ILCS 180/15—3(g) (West 2002)) applies to determine Doherty's fiduciary duties.

■ Katris acknowledges that theirs was a manager-managed LLC and that, pursuant to the Act, a member of a manager-managed LLC "who is not also a manager owes no duties to the company or to the other members solely by reason of being a member." 805 ILCS 180/15—3(g)(1) (West 2002). Katris thus concedes that Doherty did not owe any fiduciary duties solely by reason of being a member of the LLC.

■ Katris contends, however, that Doherty owed fiduciary duties to the LLC pursuant to section 15—3(g)(3) of the Act. Section 15—3(g)(3) provides:

"[A] member who pursuant to the operating agreement exercises some or all of the authority of a manager in the management and conduct of the company's business is held to the standards of conduct in subsections (b), (c), (d), and (e) of this Section to the extent that the member exercises the managerial authority vested in a manager by this Act[.]" 805 ILCS 180/15—3(g)(3) (West 2002).

■ Katris contends that Doherty exercised some of the authority of a manager in his capacity as director of technology for the LLC and thus falls within the ambit of this section. Carroll and Ernst disagree, contending that pursuant to the plain terms of the statute, Doherty was only subject to fiduciary duties if he exercised managerial authority pursuant to the operating agreement. 805 ILCS 180/15—3(g)(3) (West 2002). They maintain that Doherty did not have any such managerial authority under the operating agreement. We agree.

" 'The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.' " *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670 (2005), quoting *People ex rel. Ryan v. McFalls*, 313 Ill. App. 3d 223, 226 (2000). The plain meaning of the language used by the legislature is the best indication of legislative intent, and when the language is clear, this court should not look to extrinsic aids for construction. *Department of Transportation v. Drury Displays, Inc.*, 327 Ill. App. 3d 881, 888 (2002). If possible, a statute should be construed so that no part is rendered superfluous or meaningless. *In re Application of the County Collector*, 356 Ill. App. 3d at 670.

Looking at the plain language of section 15—3(g)(3) of the Act, Doherty was subject to fiduciary duties if he exercised some or all of the authority of a manager pursuant to the LLC's operating agreement. 805 ILCS 180/15—3(g)(3) (West 2002). The Act provides for the creation of an operating agreement, stating that "[a]ll members of a limited liability company may enter into an operating agreement to regulate the affairs of the company and the conduct of its business and to govern relations among the members, managers, and company." 805 ILCS 180/15—5(a) (West 2002). The four members of the LLC here entered into such an operating agreement on February 14, 1997.

Looking to that operating agreement, it specifically provides that the business and affairs of the LLC "shall be managed by its [m]anagers," provides for the election of Katris and Hamburg as the "sole [m]anagers" of the LLC, and sets forth the powers of the managers of the LLC. Although the operating agreement also sets forth the rights and obligations of the members, these provisions do not provide for any managerial authority. Accordingly, Doherty did not exercise any managerial authority pursuant to the LLC's operating agreement. 805

ILCS 180/15—3(g)(3) (West 2002) (imposing fiduciary duties on member who exercises some or all of the authority of a manager pursuant to the operating agreement); 805 ILCS 180/15—5(a) (West 2002) (operating agreement governs relations among members, managers, and company; Act applies to the extent not otherwise provided in operating agreement).

Katris contends, however, that the managers amended the operating agreement by passing the February 14, 1997, written consent wherein they elected Doherty "Director of Technology." He contends that Doherty's designation as "Director of Technology" elevated him to a position beyond that of a mere member of the LLC and was sufficient to impart on him some managerial authority. This argument fails for two reasons.

First, Katris has provided no authority for his contention that the written consent constituted an amendment to the operating agreement. Pursuant to its own terms, an amendment to the operating agreement required the "affirmative vote of [m]embers holding a majority of the [p]articipating [p]ercentages." Katris and Hamburg were the sole participants to the February 14, 1997, written consent and held only a combined 50% interest in the LLC. They thus could not amend the operating agreement without an additional vote. See 805 ILCS 180/15—5 (West 2002) (setting forth applicability of operating agreement in regulating affairs of the LLC). Accordingly, the facts do not support Katris' contention that the written consent constituted an amendment to the operating agreement.

Second, even if the written consent were viewed as part of the operating agreement, it did not change and, indeed, it reaffirmed the terms of the operating agreement. Katris and Hamburg executed the written consent in their capacities as the managers of the LLC. In it, they specifically resolved to adopt the operating agreement the four members had executed that day as the operating agreement of the LLC. In the signature lines to the written consent, Katris and Hamburg designated themselves as "all of the [m]anagers" of the LLC. In light of these facts, something more than the managers' designation of Doherty as "Director of Technology" was required to change the terms of the operating agreement and grant Doherty managerial authority pursuant to it. 805 ILCS 180/15—3(g)(3), 15—5 (West 2002).

In reaching this conclusion, we find Katris' contentions in his affidavit, wherein he enumerates the managerial authority Doherty held as a result of being named "Director of Technology" in the written consent, inapposite under section 15—3(g)(3) of the Act. By its terms, that section applies where the non manager member exercises some or

all of the authority of a manager *pursuant to the operating agreement.* 805 ILCS 180/15—3(g)(3) (West 2002). To look beyond the operating agreement to Katris' affidavit would be to ignore the plain meaning of the statute and to render the express words used therein superfluous or meaningless. This we cannot do. *In re Application of the County Collector,* 356 Ill. App. 3d at 670; *Drury Displays, Inc.,* 327 Ill. App. 3d at 888.

The undisputed facts of this case show that Doherty was a member of a manager-managed LLC and exercised no managerial authority pursuant to the LLC's operating agreement. Accordingly, the undisputed facts show that Doherty owed no fiduciary duties to Katris or the LLC pursuant to the Act and Katris' collusion claim against Carroll and Ernst fails as a matter of law. We therefore conclude that the circuit court properly granted the motion for summary judgment and affirm its judgment.

Affirmed.

TULLY and O'MALLEY, JJ., concur.