## A08A1205. ULQ, LLC v. MEDER.

### (666 SE2d 713)

BLACKBURN, Presiding Judge.

Terrance Meder sued ULQ, LLC for breach of contract, breach of fiduciary duty, and conversion arising out of the termination of Meder as an officer in ULQ and the resulting forced sale of his ownership interest in ULQ to ULQ; ULQ counterclaimed for breach of contract, breach of fiduciary duty, and tortious interference with contractual and business relations arising out of Meder's actions following his termination as an officer but before the sale of his ownership interest. The trial court denied ULQ's motion for summary judgment on Meder's claims and granted Meder's motion for summary judgment on ULQ's counterclaims. ULQ appeals, arguing that it had unfettered discretion to terminate Meder as an officer. We hold that because ULQ's contractual power to terminate Meder was subject to the implied covenant of good faith, Meder's breach of contract claim survives, but his tort claims fail. As to ULQ's counterclaim, we hold similarly that only the breach of contract claim survives. Accordingly, we affirm in part and reverse in part.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that during the first half of 2003, four men (including Meder) formed a limited liability company to operate a debt collection business. Meder and two others each invested $75,000, and in return each received a ten percent ownership interest in the company; the fourth man invested $350,000, receiving a seventy percent interest. The four men and ULQ executed an operating agreement, which designated the majority owner as the sole member of the company's board of managers, which board exercised all management powers of the company. As the sole manager of the company, the majority owner had the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

exclusive right to hire and fire company officers subject to the terms of the operating agreement.

Regarding the termination of an officer, the agreement provided:

> Any officer may be removed as such, either with or without cause, by the Board of Managers whenever in their judgment the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the Officer so removed.

If a member were removed from the employ of ULQ, such constituted a "Dissociating Event" that required the member to sell his interest in ULQ to ULQ (assuming the other members did not purchase same) at a designated value. During 2003, that value was the value of the member's capital account.

Appointed as a vice president of ULQ, Meder worked for several months during the second half of 2003, contacting potential clients to seek their business. On November 10, 2003, ULQ's manager (the majority owner) terminated Meder as an officer and employee of ULQ, claiming that because Meder had allegedly abused other employees, his termination was in the best interests of ULQ. On December 17, 2003, the other members of ULQ waived their right to purchase Meder's interest and ULQ exercised its right to purchase that interest, which purchase price was zero dollars due to company losses that placed the value of Meder's capital account at zero.

Meder sued ULQ, alleging that his termination and the subsequent purchase of his interest by ULQ breached the operating agreement, breached fiduciary duties owed by ULQ to him as a member, and wrongfully converted the value of his capital investment and interest to ULQ's benefit, which entitled him to compensatory and punitive damages as well as attorney fees. ULQ counterclaimed against Meder, averring that from his termination on November 10 until ULQ's purchase of his interest on December 17, Meder had wrongfully contacted ULQ's clients to persuade them (successfully) to withhold their business from ULQ. ULQ asserted claims of breach of contract, breach of fiduciary duty, and tortious interference with business and contractual relations; ULQ sought compensatory and punitive damages as well as attorney fees.

Faced with summary judgment motions from both parties that sought to dismiss all claims of the respective opposing party, the trial court denied ULQ's motion across the board, finding that the operating agreement gave rise to an implied duty of good faith that created a disputed issue of fact as to whether ULQ's manager acted in good faith in determining that Meder's termination as an officer

was in the best interests of the company. The trial court granted Meder's motion for summary judgment on all of ULQ's counterclaims, holding that no competent evidence showed that Meder had made disparaging or improper comments to ULQ's clients. ULQ appeals.

### Meder's Complaint Against ULQ

1. ULQ argues that the court erred in denying its motion for summary judgment on Meder's breach of contract claim. This claim asserted that ULQ breached the operating agreement when ULQ's manager failed to act in good faith in making the determination that Meder's termination as an officer was in the best interests of ULQ. We agree with the trial court that because this determination was a discretionary decision that was not expressly designated as absolutely or entirely within ULQ's manager's discretion, the duty of good faith implied in all contracts precluded the dismissal of this cause of action.

The construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract, which construction we review de novo. *Deep Six, Inc. v. Abernathy*.[2] Here, the key language regarding the termination of an officer reads: "Any officer may be removed as such, either with or without cause, by the Board of Managers whenever in their judgment the best interests of the Company will be served thereby. . . ." Pointing to the "with or without cause" language and to the indefinite duration of the employment, ULQ cites to *Ga. Power Co. v. Busbin*[3] and *Buice v. Gulf Oil Corp.*[4] and contends that Meder's employment as an officer was "at will," entitling ULQ to terminate Meder at any time for any reason, whether in the exercise of good faith or not. See *Gunn v. Hawaiian Airlines*.[5]

The distinguishing feature of the agreement at issue, however, is that although ULQ could terminate Meder without cause, ULQ could only do so whenever in its manager's judgment the best interests of the company would be served thereby. Thus, the power was constrained or qualified; ULQ was allowed the power to terminate Meder as an officer if and only if ULQ's manager determined (on behalf of ULQ), in his discretion or judgment, that such was in the best interests of ULQ. Absent this discretionary determination, the manager and thus ULQ could not terminate an officer.

---

[2] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).
[3] *Ga. Power Co. v. Busbin*, 242 Ga. 612, 613 (1) (250 SE2d 442) (1978).
[4] *Buice v. Gulf Oil Corp.*, 172 Ga. App. 93, 94-95 (1) (322 SE2d 103) (1984).
[5] *Gunn v. Hawaiian Airlines*, 162 Ga. App. 474 (291 SE2d 779) (1982).

Under Georgia law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." (Punctuation omitted.) *Hunting Aircraft v. Peachtree City Airport Auth.*[6] Specifically, this Court has held that

> this implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, *where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.*

(Punctuation omitted; emphasis in original.) Id. at 452 (1). The only exceptions to this rule are where an agreement by its express terms grants the party absolute or uncontrolled discretion in making a decision or where the contract is a leasehold contract, id. at 453-454 (2), neither of which is applicable here. See *Planning Technologies, Inc. v. Korman.*[7] Compare *Charles v. Leavitt*[8] (discretion was absolute where agreement stated that the party would be "the sole judge"); *Automatic Sprinkler Corp. of America v. Anderson*[9] (discretion was absolute where contract stated that the decision was "entirely within the discretion of the corporation" and that the corporation's discretion was "absolute"); *Knight Indus. v. Turner Marketing*[10] (discretion was absolute where the contract stated that the defendant was vested with "complete and absolute discretion"). No such absolute language is found in the relevant contract provision here.

Thus, because the determination requisite to terminating an officer was left to the discretion or judgment of ULQ's manager, and because no language designated that discretion or judgment as absolute or uncontrolled, ULQ's manager was bound to the exercise of good faith in making the determination that the removal of Meder from office was in the best interests of the company. *Hunting Aircraft*, supra, 281 Ga. App. at 452 (1). Here, Meder testified that, contrary to the claims of ULQ, he was in fact not abusing any fellow employees and further that he was performing valuable services for ULQ at the time of his termination. Meder presented further evidence that the true motive for the termination was to allow ULQ

---

[6] *Hunting Aircraft v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 451 (1) (636 SE2d 139) (2006).

[7] *Planning Technologies, Inc. v. Korman*, 290 Ga. App. 715, 718-719 (660 SE2d 39) (2008).

[8] *Charles v. Leavitt*, 264 Ga. 160 (442 SE2d 241) (1994).

[9] *Automatic Sprinkler Corp. of America v. Anderson*, 243 Ga. 867, 867-869 (257 SE2d 283) (1979).

[10] *Knight Indus. v. Turner Marketing*, 157 Ga. App. 177, 178-179 (276 SE2d 860) (1981).

to buy his interest for nothing, at a time when the company was about to take off financially, so that it (and indirectly the majority owner) could benefit from that ownership by either keeping it or selling it to someone else. " 'Good faith' and 'reasonableness' do not comprehend arbitrary or capricious reasons, or considerations based on pecuniary gain, or merely personal preferences; rather, they refer to 'considerations of fairness and commercial reasonableness.' " Id. A jury would be authorized to find that the manager's terminating Meder as an officer of ULQ for the purpose of indirect personal pecuniary gain (by ULQ's securing Meder's ownership interest in the company at a price of zero dollars) constituted unreasonableness or failure to act in good faith. Id. at 453 (1).

The trial court did not err in denying summary judgment on Meder's breach of contract claim against ULQ.

2. ULQ contends that it owed no fiduciary duty to Meder as a member of the company and that therefore the court erred in denying its motion for summary judgment on Meder's breach of fiduciary duty claim. We agree.

It is true that based on OCGA § 14-11-305, the majority owner as the sole manager of ULQ owed a fiduciary duty to ULQ and its member investors. *Internal Medicine Alliance v. Budell*.[11] See *Argentum Intl. v. Woods*.[12] But in fulfilling those fiduciary duties, the manager controls the LLC, not vice versa, and therefore the manager is not acting as an agent under the control of the LLC that would make the LLC responsible to the members for his actions. As stated in *Arnold v. Society for Sav. Bancorp*[13] (interpreting Delaware law of corporations),

> [i]t would be an analytical anomaly, therefore, to treat corporate directors as *agents* of the corporation when they are acting as *fiduciaries* of the stockholders in managing the business and affairs of the corporation. Holding the corporation vicariously liable for the directors' breach of a fiduciary duty would be flatly inconsistent with the rationale of vicarious liability since it would shift the cost of the directors' breach from the directors to the corporation and hence to the shareholders, the class harmed by the breach.

(Punctuation and footnote omitted; emphasis in original.) See *Radol*

---

[11] *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 236 (4) (659 SE2d 668) (2008).

[12] *Argentum Intl. v. Woods*, 280 Ga. App. 440, 447 (3) (634 SE2d 195) (2006).

[13] *Arnold v. Society for Sav. Bancorp*, 678 A2d 533, 540 (IV) (Del. 1996).

*v. Thomas*.[14] Similarly, it would make no sense to hold ULQ responsible for its manager's breach of a fiduciary duty to ULQ and its members, as it would shift the cost of that breach to the company (and indirectly to its members), thereby shifting the cost to the very parties harmed by the breach.

Based on this rationale, various foreign jurisdictions have held that a corporation owes no fiduciary duty to its shareholders. See, e.g., *Johnston v. Wilbourn*[15] (federal common law) ("[i]t is well established that a corporation owes no fiduciary duty to its shareholders, nor can it be held vicariously liable for the alleged breaches of its officers and directors") (citation omitted); *Onex Food Svcs. v. Grieser*[16] (Delaware law) ("a corporation does not owe a fiduciary duty to its shareholders nor may it be held vicariously liable for breaches of fiduciary duty committed by its officers"); *Burcham v. Unison Bancorp.*[17] (Kansas law) (corporation owes no fiduciary duty to shareholders). Compare *Frye v. Commonwealth Investment Co.*[18] (*by statute*, corporation owed fiduciary duty to shareholders to protect them from unauthorized transfers of their stock). *GLW Intl. Corp. v. Yao*[19] is also distinguishable.

Analogously, we hold that a limited liability company owes no fiduciary duty to its members, either directly or vicariously, for actions taken by its manager. Cf. *Sutherlin v. White*[20] ("breaches of fiduciary duties[ ] are not capable of being committed by an L.L.C."). As Meder can show no fiduciary duty, the trial court erred in denying ULQ's motion for summary judgment on this claim.

3. Meder's conversion claim asserts that because ULQ (by terminating Meder) breached its fiduciary duty owed to Meder, the resulting forced purchase of Meder's interest was unauthorized and therefore constituted a conversion of his interest in ULQ. However, as shown in Division 2, ULQ owed Meder no fiduciary duty. Because Meder's tort claim for conversion cannot be based on the breach of a contractual duty alone, the conversion claim necessarily failed. See

---

[14] *Radol v. Thomas*, 772 F2d 244, 258-259 (IV) (B) (6th Cir. 1985).

[15] *Johnston v. Wilbourn*, 760 FSupp. 578, 590 (S.D. Miss. 1991).

[16] *Onex Food Svcs. v. Grieser*, 1996 U. S. Dist. LEXIS 2797, * 23-34 (D) (S.D. N.Y. 1996).

[17] *Burcham v. Unison Bancorp*, 77 P3d 130, 146-147 (Kan. 2003).

[18] *Frye v. Commonwealth Investment Co.*, 107 Ga. App. 739, 745 (3) (131 SE2d 569) (1963), aff'd, *Commonwealth Investment Co. v. Frye*, 219 Ga. 498 (134 SE2d 39) (1963).

[19] *GLW Intl. Corp. v. Yao*, 243 Ga. App. 38, 42 (3) (c) (532 SE2d 151) (2000).

[20] *Sutherlin v. White*, 71 Va. Cir. 184, 191 (Va. Cir. Ct. 2006).

182

*Tidikis v. Network for Med. Communications &c.*[21] See also *Schoenbaum Ltd. Co. v. Lenox Pines, LLC.*[22]

4. Inasmuch as no tort claim for breach of fiduciary duty or conversion survived, Meder's derivative claims for punitive damages and attorney fees also failed. See *D. G. Jenkins Homes, Inc. v. Wood.*[23]

### *ULQ's Counterclaim Against Meder*

5. With regard to ULQ's counterclaim against Meder, ULQ contends that the trial court erred in granting summary judgment on its breach of contract claim against Meder. We agree.

ULQ has presented evidence that on behalf of ULQ, Meder had been courting Discover Financial Services through a liaison who was a former high-level employee at Discover. The liaison personally testified to this. Discover had committed to using ULQ's services within days, but before such could be effectuated, ULQ terminated Meder. Following his termination as an officer of the company in November but before ULQ purchased or redeemed his interest in the company in December, Meder contacted his liaison with Discover and misinformed the liaison that ULQ was experiencing extreme financial difficulties that had resulted in Meder's termination; therefore, Meder instructed the liaison to have Discover withhold its business from ULQ. The liaison contacted Discover, and Discover withheld from using ULQ for two months, during which time the liaison determined that Meder's statements of financial stress were false. Upon the liaison's informing Discover of the truth, Discover gave its business to ULQ. The two-month delay cost ULQ $40,000 in profits that would have been received from handling Discover's business during those months.

The operating agreement obligated Meder to refrain from such interference activities so long as he was a member or owner of ULQ. Specifically, the agreement provided:

> For so long as it is a Member or Economic Interest Owner, no Member or Economic Interest Owner will, directly or by assisting others, interfere with the business relationship of the Company and any of its existing or prospective customers, or attempt to induce, or encourage, any existing customer to terminate its relationship with the Company.

---

[21] *Tidikis v. Network for Med. Communications &c.*, 274 Ga. App. 807, 812 (3) (619 SE2d 481) (2005).

[22] *Schoenbaum Ltd. Co. v. Lenox Pines, LLC*, 262 Ga. App. 457, 466-467 (6) (585 SE2d 643) (2003).

[23] *D. G. Jenkins Homes, Inc. v. Wood*, 261 Ga. App. 322, 325 (3) (582 SE2d 478) (2003).

Thus, Meder had agreed to not interfere with customer relationships so long as he remained a member or owner of ULQ. ULQ presented evidence that Meder had breached this obligation, causing damages to ULQ. Circumstantial evidence gave rise to an inference that the liaison's testimony about Meder's remarks to him and about his passing along those remarks to Discover, followed immediately by Discover's not forwarding its business to ULQ as promised, proximately caused Discover to withhold its business for the two months indicated.

The same cannot be said of ULQ's other breach of contract claims for damages arising from other potential clients' withholding their business from ULQ. Regarding those clients, ULQ did not produce a witness who heard any disparaging remarks to those clients, and Meder denied making such remarks. ULQ's majority owner's testimony about what those clients told him was clearly hearsay and inadmissible to oppose summary judgment. See *White Missionary Baptist Church v. Trustees of First Baptist Church of White, Ga.*[24] (hearsay cannot be considered on summary judgment). See also *Atlanta Glass, Inc. v. Tucker*[25] (hearsay inadmissible on summary judgment). The majority owner's notes of those conversations were yet further removed as hearsay on hearsay and were therefore also inadmissible, even as business records. *Mitchell v. State.*[26] See *Liu's Enterprises Corp. v. Li.*[27]

Accordingly, the trial court erred in granting summary judgment with regard to the breach of contract claim involving the Discover account, but it did not err in granting summary judgment on all other breach of contract claims alleged by ULQ.

6. Based on Meder's same actions, ULQ asserted claims of tortious interference with business and contractual relations. Beyond the reasons stated in Division 5, none of these claims survive — not even the one involving Discover — because Meder was no stranger to any of these business or contractual relationships. The first element of a tortious interference claim requires that the defendant have acted without privilege; but "if the defendant has a legitimate economic interest in either the contract or a party to the contract, then the defendant is not a stranger to the contract and acts with privilege." *Tidikis*, supra, 274 Ga. App. at 812 (4). In other words, "[w]here a defendant has a financial interest in one of the

YALE LAW LIBRARY

---

[24] *White Missionary Baptist Church v. Trustees of First Baptist Church of White, Ga.*, 268 Ga. 668, 669 (1) (492 SE2d 661) (1997).

[25] *Atlanta Glass, Inc. v. Tucker*, 291 Ga. App. 760 (663 SE2d 272) (2008).

[26] *Mitchell v. State*, 254 Ga. 353, 355 (5) (a) (329 SE2d 481) (1985).

[27] *Liu's Enterprises Corp. v. Li*, 204 Ga. App. 397, 398 (2) (419 SE2d 511) (1992).

parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract." Id. at 813 (4). Here, Meder was admittedly a ten percent owner in ULQ (a party to the business relationships or contracts) at the time he allegedly interfered, and therefore could not have been a stranger. The court correctly granted Meder summary judgment on the tortious interference claims.

7. ULQ asserts that as a member of the company, Meder owed it a fiduciary duty not to interfere with customer relationships, and that his doing so breached that fiduciary duty. Because members owe no fiduciary duties to the limited liability company, the trial court correctly granted Meder summary judgment on this claim.

Statutorily, the duties owed by a member to the limited liability company are set forth in OCGA § 14-11-305 (1), which provides in pertinent part:

> In managing the business or affairs of a limited liability company[, a] member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. A member or manager is not liable to the limited liability company, its members, or its managers for any action taken in managing the business or affairs of the limited liability company if he or she performs the duties of his or her office in compliance with this Code section. Except as otherwise provided in the articles of organization or a written operating agreement, a person who is a member of a limited liability company in which management is vested in one or more managers, and who is not a manager, shall have no duties to the limited liability company or to the other members solely by reason of acting in his or her capacity as a member. . . .

Thus, when managing the affairs of the company, a member must act in good faith in the best interests of the company. If a member is not managing the affairs of the company, then no such duty attaches. Indeed, where a member is not a manager in a company in which management is vested in one or more managers, the statute expressly provides that that member "*shall have no duties* to the limited liability company or to the other members solely by reason of acting in his or her capacity as a member" (unless otherwise provided in the operating agreement or articles of organization). (Emphasis supplied.) OCGA § 14-11-305 (1). Cf. OCGA § 14-11-301

(b) (1) (in manager-managed companies, "[n]o member, acting solely in the capacity as a member, is an agent of the limited liability company . . .").

Thus, absent contrary provisions in the operating agreement or articles of organization, "[m]embers of manager-managed LLCs owe no fiduciary duties, except to the extent that they participate in management." Sally S. Neely, Partnerships and Partners and Limited Liability Companies and Members in Bankruptcy: Proposals for Reform, 71 Am. Bankr. L.J. 271, 283 (II) (B) (5) (1997). Indeed, based on an LLC statute worded similarly to Georgia's, the Illinois Appellate Court has held that such language precludes the imposition of fiduciary duties on members (in manager-managed LLCs) solely by reason of their being members of the LLC. *Katris v. Carroll*.[28] See 805 Ill. Comp. Stat. 180/15-3 (g). See also *Endeka Enterprises, LLC v. Meiburger (In re Tsiaoushis)*[29] (non-managing members of manager-managed LLCs owe no fiduciary duties to other members or to the LLC). See generally Sandra K. Miller, What Buy-Out Rights, Fiduciary Duties, and Dissolution Remedies Should Apply in the Case of the Minority Owner of a Limited Liability Company?, 38 Harv. J. on Legis. 413, 448-450 (2001) (noting the general trend away from the judicial implication of fiduciary duties on LLC members).

Because the plain language of OCGA § 14-11-305 provides that non-managing members in manager-managed LLCs owe no duties to the LLC or other members, we hold that non-managing members owe no fiduciary duties to the LLC or the other members. Although the parties may impose such duties in the operating agreement or articles of organization, see *Ledford v. Smith*,[30] neither the operating agreement nor the articles of organization do so here. Cf. OCGA § 14-11-1107 (b) ("[i]t is the policy of this state with respect to limited liability companies to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements").

Accordingly, the trial court did not err in granting Meder summary judgment on ULQ's claim of breach of fiduciary duty. As a result, ULQ's derivative claims of punitive damages and attorney fees also fail. See *D. G. Jenkins Homes, Inc.*, supra, 261 Ga. App. at 325 (3).

In summary, the only claims to survive summary judgment are Meder's claim against ULQ for breach of contract (based on the

---

[28] *Katris v. Carroll*, 842 NE2d 221, 224-225 (Ill. App. 2005).

[29] *Endeka Enterprises, LLC v. Meiburger (In re Tsiaoushis)*, 2007 U. S. Dist. LEXIS 53376 (E.D. Va. 2007).

[30] *Ledford v. Smith*, 274 Ga. App. 714, 723-724 (2) (a) (618 SE2d 627) (2005).

implied covenant of good faith) and ULQ's counterclaim against Meder for breach of contract related to Discover. Summary judgment should be entered on all other claims.

*Judgment affirmed in part and reversed in part. Miller and Ellington, JJ., concur.*

DECIDED JULY 18, 2008 —
RECONSIDERATION DENIED AUGUST 1, 2008 —

*Cohen, Pollock, Merlin, Axelrod & Small, Mark S. Marani, Kevin T. O'Sullivan, Withrow, McQuade & Olsen, Terrence McQuade*, for appellant.

*Pankey & Horlock, Larry A. Pankey, Allison K. Warner, Parks, Chesin & Walbert, Andrew Y. Coffman*, for appellee.