**THIRD DIVISION
MILLER, P. J.,
MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 13, 2017**

# In the Court of Appeals of Georgia

A16A1920. BRAZEAL v. NEWPOINT MEDIA GROUP, LLC.

MCMILLIAN, Judge.

This is the second appearance of this case arising out of a contractual dispute between Plaintiff David Brazeal ("Brazeal"), and his former employer, Defendant NewPoint Media Group, LLC ("NewPoint"). In *Brazeal v. NewPoint Media Group, LLC*, 331 Ga. App. 49 (769 SE2d 763) (2015) (*Brazeal I*), this Court upheld the grant of summary judgment to NewPoint on Brazeal's claim that he was owed severance pay under the terms of his employment agreement with NewPoint ("Agreement") after NewPoint declined to renew the Agreement for an additional one-year term. Id. at 53-57. However, we declined to rule on Brazeal's claim for breach of the implied covenant of good faith and fair dealing, noting that any issues relating to that claim

were not ripe for appellate review because the trial court did not rule on the implied covenant claim in its summary judgment order. Id. at 53 n.2.

Upon remittitur, NewPoint renewed its motion for summary judgment on Brazeal's claim for breach of the implied covenant of good faith and fair dealing. The trial court granted NewPoint's motion and entered a partial final judgment,[1] finding that Brazeal had failed to set forth a claim for the breach of the implied warranty of good faith and fair dealing and that even if he had, he had failed to present sufficient evidence to create a disputed issue of material fact as to whether NewPoint acted in good faith. We discern no error in the grant of summary judgment and now affirm.

As set out in *Brazeal I*,[2] Brazeal was hired as chief financial officer ("CFO") of NewPoint under the terms of the Agreement, which was dated June 28, 2012. The Agreement contained two separate and distinct provisions governing how Brazeal and NewPoint could end the employment relationship. Section 1, which was headed "Term," provided for an initial term of employment for one year and an automatic

---

[1] The trial court specifically noted that the issue of attorney fees had not yet been resolved .

[2] We set out only those facts necessary to decide this case. A more complete recitation of the procedural and factual history of this case is set out in *Brazeal I.*

2

renewal for additional one-year periods unless Brazeal of NewPoint provided the other party written notice of "non-renewal":

> 1. **Term**. The term of Employee's employment will commence (the "**Start Date**") on the later of (a) the date of this Agreement and (b) the date on which the Company acquires substantially all of the assets of Network Communications, Inc. (the "**Seller**"), and continue for a period of one year (the "**Initial Term**") and shall thereafter automatically renew for additional twelve (12) month periods (each, a "**Renewal Term**") unless written notice of non-renewal is given by one party to the other at least ninety (90) days prior to the expiration of the Initial Term or any Renewal Term, as applicable. Employee's actual term of employment by the Company under this Agreement is referred to as the "**Term**." The provisions of Sections 8 through 11 hereof shall survive the termination of Employee's employment with the Company in accordance with their respective terms.

(Emphasis in original.)

Under Section 6 of the Agreement, NewPoint also had the ability to terminate Brazeal's employment, with or without cause, and Brazeal could resign at any time for any or no reason, if certain notice requirements were met:

> 6. **Ability to Terminate.** Notwithstanding Section 1, Employee understands and agrees that the Company reserves the right upon thirty (30) days prior written notice (which notice will not be required in the event of termination for Cause, in which case termination shall be

3

effective on the date of the notice) to terminate Employee's employment with the Company at any time for any reason or for no reason whatsoever, with or without Cause. Likewise, Employee may Resign his employment with the Company at any time (upon thirty (30) days prior written notice) for any reason or for no reason whatsoever. Employee's employment by the Company will automatically terminate upon Employee's death or Permanent Disability.

Further, NewPoint was required to pay Brazeal severance pay if NewPoint terminated the Agreement without cause under the provisions of Section 6, as specifically set out in Section 7 (b):

7. **Termination obligations.**

 . . .

(b) Following the Company's termination of Employee's employment without Cause, . . .

(i) the Company will continue to pay Employee, in accordance with the company's usual payroll practices and subject to all applicable withholding and deductions, Employee's then current Base Salary for a period of nine (9) months (the "**Severance Period**").

Brazeal began serving as CFO sometime in June 2012. NewPoint decided to replace Brazeal as CFO in December 2012, and in January 2013 formally initiated a

search for his replacement. Brazeal, however, was not informed of these developments at that time, and in March 2013 NewPoint's board of directors sent Brazeal a letter notifying him that the company did not intend to renew his initial one-year term of employment for an additional term in accordance with Section 1 of the Agreement. There is no question that the letter satisfied the notice requirements set out in Section 1 for non-renewal.

Brazeal subsequently filed the present suit, alleging, among other things, that NewPoint breached the Agreement by failing to pay him severance pay under Section 7 of the Agreement and breached the covenant of good faith and fair dealing by exercising its discretion to invoke the non-renewal provisions of Section 1 instead of the Termination without Cause provisions of Section 6, thereby avoiding paying him severance pay. In *Brazeal I*, we upheld the trial court's grant of summary judgment to NewPoint on Brazeal's breach of contract claim and must now decide if summary judgment was proper on his breach of implied covenant claim.

Generally speaking, under Georgia law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." (Citation and punctuation omitted.) *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 451 (1) (636 SE2d 139) (2006). More "[s]pecifically, we

5

have held that this implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, *whether the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.*" (Citation and punctuation omitted; emphasis in original.) Id. at 452 (1).

At the same time, however, as we explained in *Martin v. Hamilton State Bank*, 314 Ga. App. 334 (723 SE2d 726) (2012),

> [f]irms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith." Although courts often refer to the obligation of good faith that exists in every contractual relation, this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. "Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith fill the gap. They do not block use of terms that actually appear in the contract.
>
> (Citation and punctuation omitted.) Id. at 335-36.

6

We agree with the trial court that *Martin* is instructive here. In that case, which involved the failure to pay a loan, the parties had entered into several promissory notes which gave the Bank the right to pursue different remedies in the event of default, including restructuring the debt, which the borrower wanted the Bank to do, or declaring default and accelerating the debt, which was the remedy the Bank opted to pursue. 314 Ga. App. at 334-35. The debtor contended the Bank had violated the implied duty of good faith and fair dealing when it decided to pursue its remedy instead of agreeing to restructure, but this Court upheld the grant of summary judgment to the Bank on this claim, finding that "[t]he express terms of the note identify the remedies available to the Bank in the event of a default, and the Bank was entitled to choose whichever remedy it preferred." Id. at 336.

Similarly here, the parties agreed that they could end their employment relationship in several ways and incorporated these options in the Agreement. NewPoint opted to use the method that allowed Brazeal to be paid until the end of the initial term of the Agreement, but did not entitle him to any severance pay under Section 7 of the Agreement. Nothing in the Agreement required NewPoint to choose the method that was most advantageous to Brazeal, and if the parties had wanted to do so, they clearly could have done so in drafting the Agreement.

7

Moreover, we do not think the cases cited by Brazeal require a different result. For instance in *ULQ, LLC v. Meder*, 293 Ga. App. 176 (666 SE2d 713) (2008), the LLC's Board of Managers had the ability to terminate officers of the corporation "with or without cause," but could only do so "whenever in their judgment the best interests of the [LLC] will be served thereby[.]" Id. at 177. We found this best interests provision constrained or qualified the power of the Board of Managers, id. at 178, and that in making this discretionary determination, they were "bound to the exercise of good faith in making the determination that the removal of [the officer] from office was in the best interests of the company." Id. at 179.

In *Hunting Aircraft,* the contract granted the airport authority the ability to declare the parties' agreement in default if the other party conveyed or assigned its property interests and easement rights without first obtaining the written consent of the authority. In that situation, whether to consent to the assignment was subject to an implied obligation of good faith so as not to unreasonably deprive the party seeking to assign his ability to do so, or allow the authority to declare the other party in default merely by withholding its consent for no good reason. 281 Ga. App. at 452-53 (1). See also *Planning Technologies, Inc. v. Korman*, 290 Ga. App. 715 (660 SE2d 39) (2008) (Board of Directors was required to exercise good faith in deciding if there

8

had been a "change of condition," which would allow a corporate officer to accelerate certain stock options).

Here, the Agreement provides several ways in which the employment relationship could end and did not require either party to pick the method that would be most advantageous, or less damaging, to the other party. This was the Agreement negotiated by the parties, and the parties were free to exercise their discretion in deciding which method to use so long as they otherwise complied with the terms of the Agreement respecting their choice. "There can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Automatic Sprinkler Corp. v. Anderson*, 243 Ga. 867, 868 (257 SE2d 283) (1979). Accordingly, the trial court did not err by granting summary judgment to NewPoint on this basis, and we need not reach the trial court's finding that Brazeal failed to present sufficient evidence to create a disputed issue of material fact on NewPoint's good faith.

*Judgment affirmed. McFadden, P. J., concurs. Miller, P. J., concurs in judgment only.*