DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRIDGE FINANCIAL, INC.,** a Florida for-profit corporation, **ADAM PALAS, ALEXANDER PALAS,** and **SERGIO NATIVI,**
Appellants,

v.

**J. FISCHER & ASSOCIATES, INC.,**
a Florida for-profit corporation,
Appellee.

No. 4D19-348

[December 9, 2020]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey Gillen, Judge; L.T. Case No. 502009CA008358XXXXMB.

Leonard S. Feuer of Leonard Feuer, P.A., West Palm Beach, for appellants.

John R. Whittles and Elizabeth F. Olds of Mathison Whittles, LLP, Palm Beach Gardens, for appellee.

LEVINE, C.J.

Appellants Adam Palas, Alex Palas, and Sergio Nativi worked at appellee J. Fischer & Associates, Inc. ("JFA"). Appellants were terminated after they copied JFA's entire server, including the client list, and formed their own competing business, appellant Bridge Financial, Inc. After their termination, appellants solicited JFA's clients, allegedly causing a decrease in JFA's revenue. JFA sued, and a jury entered a verdict in favor of JFA.

Appellants appeal, raising a litany of issues. Appellants argue that the trial court erred in (1) denying their motion for new trial because the client list was not a trade secret; (2) denying their motion for new trial because they did not tortiously interfere with JFA's business relationships, (3) denying their motion for new trial because JFA's owner provided false testimony, (4) admitting expert testimony on damages, (5) striking their affirmative defense of good faith, (6) denying their motion for judgment on

the pleadings as to FUTSA preemption, and (7) prohibiting testimony on why appellants copied JFA's server. JFA cross-appeals, challenging a judgment on the pleadings in favor of Adam Palas, who is a 5% owner of JFA, for tortious interference. We affirm on all issues, but write only to address issues 1, 2, and 7 on direct appeal as well as the issue on cross-appeal.

JFA sued appellants for misappropriation of trade secrets, tortious interference with a business relationship, civil conspiracy, conversion, breach of duty of loyalty, and breach of fiduciary duty. Before trial, the trial court granted JFA's motion in limine to limit evidence accusing JFA's owner, Jay Fischer, of tax fraud. The trial court also granted a motion for judgment on the pleadings in favor of Adam Palas for tortious interference because, as a shareholder of JFA, he could not interfere with himself. At trial, the following testimony was given.

Fischer is a tax accountant and financial advisor. Fischer worked with his father for a number of years until they sold their company and client list to another firm that later became Pinnacle Taxx Advisors. Fischer stayed on as a manager. While at Pinnacle, Fischer hired Adam Palas and Alex Palas.

In 2006, Fischer formed his own company, JFA, and purchased the client list from Pinnacle, paying $140,000 to $160,000. Pinnacle had 1,500 to 2,000 clients, some of whom were the original clients of Fischer and his father. Adam Palas and Alex Palas came to work for Fischer at JFA. Fischer also hired Sergio Nativi. Fischer later sold Adam Palas a 5% share. JFA's client retention rate was over 90%. JFA prepared over 2,000 tax returns its first year.

JFA maintained its client list on the server, which was password protected. The client list consisted not only of clients' names and addresses but also copies of the clients' tax returns and all the information used to prepare those returns such as W-2 forms, 1099 forms, business records, receipts, social security numbers, dates of birth, childcare information, and health records. JFA spent a significant amount of time, effort, and money in developing the client list, which was not publicly available.

While employed at JFA, appellants set up their own corporation, Bridge Financial, and copied JFA's entire server, including the client list. Appellants also drafted a letter on JFA's computer system announcing the opening of their competing firm and offering each client a "detailed

2

checklist tailored to your specific account." Fischer terminated appellants upon discovering that they were planning on leaving and soliciting clients.

Appellants subsequently solicited JFA's clients, offering them a $100 flat rate fee. Approximately 420 clients converted to Bridge Financial. The year after appellants left, JFA prepared 600 less returns than the year before. The loss of clients resulted in lost revenue from both tax preparation and referrals. JFA's expert forensic accountant estimated a range of damages between $247,030, assuming a growth rate of 7.84%, and $763,242, assuming the historical growth rate of 15.86%.

The jury found appellants liable on all six counts and awarded JFA a total of $255,770 in damages. Following the denial of their motion for new trial, appellants appeal. JFA cross-appeals.

As to the first issue, appellants argue that the trial court erred in denying their motion for new trial because JFA's client list did not qualify as a trade secret. An order denying a motion for new trial is reviewed for abuse of discretion. *Izquierdo v. Gyroscope, Inc.*, 946 So. 2d 115, 117 (Fla. 4th DCA 2007). Section 688.002(4), Florida Statutes (2017), of Florida's Uniform Trade Secret Act ("FUTSA"), defines "trade secret" as follows:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"A customer list can constitute a 'trade secret' where the list is acquired or compiled through the industry of the owner of the list and is not just a compilation of information commonly available to the public." *E. Colonial Refuse Serv., Inc. v. Velocci*, 416 So. 2d 1276, 1278 (Fla. 5th DCA 1982). As this court has explained:

> To qualify as a trade secret, there must be evidence that a customer list "was the product of great expense and effort, that it included information that was confidential and not available from public sources, and that it was distilled from

3

larger lists of potential customers into a list of viable customers for [a] unique business."

*Zodiac Records Inc. v. Choice Env't Servs.*, 112 So. 3d 587, 590 (Fla. 4th DCA 2013) (citation omitted).

We find the trial court did not abuse its discretion in denying the motion for new trial. The evidence demonstrated that JFA's client list was a trade secret. JFA purchased the client list from Pinnacle. The client list included not only the clients' names and addresses but also copies of the clients' tax returns and all the information used to prepare those returns. JFA spent a significant amount of time, effort, and money developing the client list, which was kept on JFA's password protected server and was not publicly available.

As the next issue, appellants claim the trial court erred in denying their motion for new trial as to tortious interference because the client list is not a trade secret. Because we conclude that the client list is a trade secret, appellants' argument also fails.

Finally, appellants claim the trial court erred in prohibiting testimony of why they copied JFA's server, specifically that Fischer was committing tax fraud. A trial court's ruling on a motion in limine is reviewed for abuse of discretion, as limited by the rules of evidence. *Edwards v. State*, 39 So. 3d 447, 448 (Fla. 4th DCA 2010).

We find that the trial court did not abuse its discretion in excluding allegations that Fischer committed tax fraud. Moreover, any error in excluding evidence was harmless because, contrary to appellants' contention, the jury did in fact hear testimony of why appellants copied JFA's server. *See Blanco v. State*, 89 So. 3d 933, 936 (Fla. 3d DCA 2012); *Connell v. Green*, 330 So. 2d 473, 475 (Fla. 1st DCA 1976). This testimony included evidence that Adam Palas accused Fischer of underreporting income and that, as a result of the accusation, Fischer paid additional taxes. Additionally, Adam Palas testified that he instructed Nativi to copy the server because he thought his profit distribution was low, and he wanted to independently verify the amount his 5% distribution should have been. Thus, the trial court did not abuse its discretion in granting the order in limine and, even if it did, any error was harmless.

As to the cross-appeal, JFA argues that the trial court erred in granting a judgment on the pleadings in favor of Adam Palas as to tortious interference with a business relationship because although he was a 5% minority shareholder of JFA, he was not personally a party to the

4

relationship between JFA and its customers. The elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

In finding that tortious interference does not exist against one who is a party to the business relationship, the trial court relied on *Palm Beach County Health Care District v. Professional Medical Education, Inc.*, 13 So. 3d 1090 (Fla. 4th DCA 2009). In *Palm Beach County Health Care*, this court stated that "[f]or the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Id.* at 1094 (citation omitted). "[A] defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Id.* "[A] cause of action for tortious interference does not exist against one who is himself a party to the business relationship with which there has allegedly been interference." *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 999 (Fla. 4th DCA 2002).

We agree with the trial court that, as a shareholder in JFA with a 5% interest in the company, Adam Palas could not interfere in a business relationship with himself. *ULQ, LLC v. Meder*, 666 S.E.2d 713 (Ga. Ct. App. 2008), is instructive. In that case, a company alleged a claim against a former officer, who still had a 10% ownership interest in the company, for tortious interference with contractual and business relationships arising out of his actions following his termination. *Id.* at 715. The appellate court found that the tortious interference claim failed because the former officer was not a stranger to the business or contractual relationships. *Id.* at 720. The court explained that "[w]here a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract." *Id.* (citation omitted). Because the former officer "was admittedly a ten percent owner in [the company] (a party to the business relationships or contracts) at the time he allegedly interfered, and therefore could not have been a stranger." *Id.*; *see also Morris v. Buvermo Props., Inc.*, 510 F. Supp. 2d 112, 120 (D.D.C. 2007) ("As a part owner of [the corporation, the defendant] is a party to the contract . . . and thus cannot be sued for tortious interference with his own contract."). Similarly, in this case, because Adam Palas was

5

a partial owner in JFA, he was not a stranger to a business relationship, and thus cannot be held liable for tortious interference.

In conclusion, we affirm the trial court in all respects as to the direct appeal and cross-appeal.

*Affirmed.*

WARNER and ARTAU, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***