GROSS, C.J.
 

 The Palm Beach County Health Care District appeals a final judgment entered after a jury verdict. The jury awarded damages on three legal theories — tortious interference with a business relationship, defamation, and conspiracy to commit defamation and tortious interference. Each of these causes of action is derailed by a significant legal obstacle. A necessary element of tortious interference is absent and absolute immunity precludes defamation. Without the anchor of these torts, there is no compensable conspiracy. Therefore, we reverse the final judgment.
 

 The District is a creation of statute, Chapter 2003-326, Laws of Florida, the Palm Beach County Health Care Act. Ch. 2003-326, § 3, Laws of Fla. Explicitly setting forth its intent, the Legislature recognized that it was “in the public interest ... to maximize the health and well-being of Palm Beach County residents by providing comprehensive planning, funding, and coordination of health care service delivery.”
 
 Id.
 
 at section 3, § 2. As a goal, the Act states that “[a]ll programs should be coordinated to maximize the delivery of quality health care.”
 
 Id.
 
 The District’s board “is vested with the authority and responsibility to provide for the comprehensive planning and delivery of adequate health care facilities ... and services.”
 
 Id.
 
 at section 3, § 6. Among the enumerated powers of the Board all specified in section 3 of the Act are:
 

 a) the power “to provide services ... jointly with other public or private health care providers, with appropriate provision to reduce the costs of providing service for all users thereof’, § 6(2);
 

 b) the power to “sue and be sued in its own name ... but with all sovereign immunity and limitations provided by the State Constitution or general law”, § 6(6);
 

 c) the power to “borrow money and issue bonds ... [and] to levy such tax as may be authorized”, § 6(12);
 

 d) the power to “contract with other governmental agencies or private individuals or entities as may be necessary, convenient, incidental, or proper in connection with any of the powers, duties, or purposes authorized by” the Act, § 6(18); and
 

 e) the power to “establish criteria for the provision of health care pursuant to this act”, § 6(25).
 

 See also
 
 Ch. 87-450, § 3, Laws of Fla. (earlier version of enabling legislation).
 

 One of the programs established by the District was designed to enhance the medi
 
 *1093
 
 cal skills of emergency medical services (“EMS”) personnel. To set up a course under the program, an educational provider would arrange with an EMS agency to present a course on a specified date and secure advance approval from the District for the course. After a provider presented the course for the EMS agency, it would receive payment directly from the District, once it had submitted certain documentation.
 

 Dr. Jeff Davis was the District’s Trauma Agency director. The plaintiff below, ap-pellee Professional Medical Education, Inc. (“PME”), was a vendor of continuing education courses for EMS personnel. Ted Young was the owner of PME. The continuing education courses were required for EMS personnel to maintain their professional certifications. Under the District’s program, PME’s contract framework was to enter into an agreement with a Palm Beach County EMS agency to conduct educational programs for employees and then to invoice the District after the courses were provided.
 

 The defamation count was based on a February 23, 2000 letter about PME that Davis wrote to Basic Trauma Life Support of Florida, Inc., an organization that sanctions and oversees medical training courses. Before he sent the letter, Davis and Young had butted heads over necessary documentation for reimbursement. PME contended that this letter was part of a conspiracy between Davis and PME’s competitors in delivering educational programs to damage PME’s business.
 
 [1]
 
 As a result of the letter, Basic Trauma temporarily suspended PME’s certification pending further investigation.
 

 The tortious interference count focused on PME’s relationship with Palm Beach County Fire Rescue, which had 1,100 employees who needed training, and the City of Greenacres, a smaller client. After PME contracted with Greenacres and Palm Beach County Fire Rescue to put on seminars, Davis told both entities that the District would not make payments for the courses. Both courses were put on “hold.” PME contended that the District’s institution of a formal bidding procedure and the creation of an approved vendor list was part of the conspiracy to deprive PME of business. PME did not submit a proposal in response to the District’s published invitation for bid.
 

 At trial, the circuit court granted Davis’s motion for directed verdict on the defamation count, ruling that the undisputed facts demonstrated that Davis was acting within the scope of his employment with the District when he sent the February 23, 2000 letter, so that he was protected by absolute immunity under
 
 McNayr v. Kelly,
 
 184 So.2d 428, 433 (Fla.1966). The court rejected the District’s argument that it too was immune from suit under
 
 McNayr.
 

 The jury found against the District on the defamation, tortious interference, and conspiracy claims and awarded $692,400 in damages.
 

 The recovery on the tortious interference count fails because the District’s “interfering” conduct was not unjustified, a required element of the tort.
 

 
 *1094
 
 The elements of tortious interference with a business relationship are: “(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant’s knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.”
 
 See Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,
 
 742 So.2d 381, 385 (Fla. 4th DCA 1999). “For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship.”
 
 Id.
 
 at 386;
 
 Ernie Haire Ford, Inc. v. Ford Motor Co.,
 
 260 F.3d 1285, 1294 (11th Cir. 2001). A defendant is not a “stranger” to a business relationship if the defendant “has any beneficial or economic interest in, or control over, that relationship.”
 
 Nimbus Tech., Inc. v. SunnData Prods., Inc.,
 
 484 F.3d 1305, 1309 (11th Cir.2007) (quoting
 
 Tom’s Foods, Inc. v. Carn,
 
 896 So.2d 443, 454 (Ala.2004)).
 

 Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed.
 

 In
 
 Ethyl Corp. v. Balter,
 
 386 So.2d 1220, 1224 (Fla. 3d DCA 1980), a guarantor of a
 
 loan
 
 between a bank and a borrower was held to be a “party” to that loan contract, so that the guarantor could not be held liable for the tort of interfering with the contract. Similarly, in
 
 United of Omaha Life Insurance Co. v. Nob Hill Associates,
 
 450 So.2d 536, 539 (Fla. 3d DCA 1984), the court held that the future purchaser of a mortgage broker’s loan to a borrower was a “party” to that contract, so that the borrower could not maintain an action against the purchaser for tortiously interfering with the loan contract.
 

 The case most similar to this one is
 
 Genet Co. v. Annheuser-Busch, Inc.,
 
 498 So.2d 683 (Fla. 3d DCA 1986). There the plaintiffs contracted with a beer wholesaler to purchase the wholesalership. The wholesaler’s agreement with Annheuser-Busch required Annheuser’s approval for a transfer of the business. Annheuser did not approve the transfer. The plaintiff sued Annheuser for interfering with their contract with the wholesalership. The third district affirmed a summary judgment for Annheuser, holding that it was a “party to the business relationship allegedly interfered with”; Annheuser’s contractual right “to approve or disapprove any proposed transfer” rendered it an interested third party to the plaintiffs’ agreement.
 
 Id.
 
 at 684.
 

 Like Annheuser in
 
 Genet,
 
 the District was not a stranger to PME’s business relationships with Palm Beach County Fire Rescue and Greenacres, but was an interested third party. The District was the source of funds to pay for the services PME was to provide. Under the law of tortious interference, the District is not a “stranger” to any contract that it ultimately will fund. As the caretaker of public money raised by taxes, the District has an interest in insuring that public funds are spent for a proper purpose and in seeing that the money is spent wisely and prudently. To allow the tort of interference to apply in this case would be to discourage the District from being an aggressive caretaker of public funds. Application of the tort to a situation involving a governmental agency’s expenditure of funds “would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.”
 
 Gregoire v. Biddle,
 
 177 F.2d 579, 581 (2d Cir.1949) (Hand, J.) (in which court dis
 
 *1095
 
 cussed the doctrine of absolute immunity for the executive branch of government);
 
 see McNayr,
 
 184 So.2d at 431 n. 12 (quoting
 
 Gregoire
 
 with approval). For this reason, PME could not maintain a cause of action for tortious interference against the District.
 

 This holding is consistent with the rationale behind the tort. The cause of action for tortious interference with a business relationship “recognizes that economic relations are entitled to freedom from unreasonable interference.”
 
 United Yacht Brokers, Inc. v. Gillespie,
 
 377 So.2d 668, 672 (Fla.1979). The point of a business relationship is to advance the interests of the parties involved. Tortious interference protects the interests of parties to an agreement against interference by outsiders, who would not be liable otherwise for breach. In the case of an interested third-party, the contractual interests that tor-tious interference is intended to protect
 
 include
 
 the interests of the third-party with respect to the contract.
 
 See
 
 2 Dan B. Dobbs,
 
 The Law of Torts,
 
 § 449 (2001); Restatement (Seoond) of Toets § 769 (1979). An interested third-party accused of tortious interference is essentially “interfering” with its own interests. This is not interference; it is freedom of contract.
 

 PME points to
 
 American National Title & Escrow of Florida, Inc. v. Guarantee Title & Trust Co.,
 
 810 So.2d 996 (Fla. 4DCA 2002), but that case is distinguishable. There we held that even though the defendant “had a relationship” with the plaintiff, the defendant could be held liable for interfering with the plaintiffs relationships with its customers.
 
 Id.
 
 at 999. Crucial to this holding in
 
 American National
 
 was the fact that the “relationships” interfered with were unrelated to the “relationship” between the plaintiff and defendant. In this case, the District had a direct connection to the crucial relationships — it was the ultimate source of funds for the seminars PME intended to give.
 

 The fact that Davis may have harbored some “personal malice or ill-will” towards PME and Taylor does not transform this case into one for tortious interference. Because it was not a stranger to the crucial business relationships, the District’s acts did not amount to unjustified interference. As the Florida Supreme Court wrote in the first case that recognized the tort of interference,
 

 [w]here one does an act which is legal in itself, and violates no right of another person, it is true that the fact that the act is done from malice, or other bad motive towards another, does not give the latter a right of action against the former.
 

 Chipley v. Atkinson,
 
 23 Fla. 206, 1 So. 934, 938 (Fla.1887) (quoted in
 
 Ethyl Corp.,
 
 386 So.2d at 1225).
 

 On the defamation count, the circuit court properly granted Davis’s motion for directed verdict under
 
 McNayr.
 
 That case held that “executive officials of government are absolutely privileged as to defamatory publications made in connection with the performance of the duties and responsibilities of their office.”
 
 McNayr,
 
 184 So.2d at 433. The supreme court adopted a broad view of when a government official acts “within the orbit of his duties and responsibilities” so that absolute immunity applies.
 
 Goetz v. Noble,
 
 652 So.2d 1203, 1205 (Fla. 4th DCA 1995) (quoting
 
 McNayr,
 
 184 So.2d at 430). Davis was acting within the orbit of his duties and responsibilities when he wrote the February 23, 2000 letter. Because the liability of the District on the defamation count is predicated on its status as Davis’s employer, the absolute immunity of Davis “necessarily requires the exoneration” of the District.
 
 Saxon v. Knowles,
 
 185 So.2d 194, 196 (Fla. 4th DCA 1966);
 
 see Bauer v.
 
 
 *1096
 

 City of Gulfport,
 
 195 So.2d 571, 573 (Fla. 2d DCA 1967);
 
 Murphy v. City of Aventura,
 
 No. 08-20603-CIV, slip op. at 5 n. 3, 2008 WL 4540055 (S.D.Fla. Oct. 10, 2008);
 
 Medina v. City of Hialeah,
 
 No. 02-20957-CIV, 2003 WL 1562281 (S.D.Fla. Mar. 24, 2003).
 
 [2]
 

 Since the counts regarding the goals of the conspiracy — defamation and tortious interference — fail, so too the conspiracy count must fail. “The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff.”
 
 Liappas v. Augoustis,
 
 47 So.2d 582, 582 (Fla. 1950). “An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy.”
 
 [3]
 

 Buckner v. Lower Fla. Keys Hosp: Dist.,
 
 403 So.2d 1025, 1027 (Fla. 3d DCA 1981);
 
 Liappas,
 
 47 So.2d at 582;
 
 see Days v. Fla. E. Coast Ry. Co.,
 
 165 So.2d 434, 435 (Fla. 3d DCA 1964).
 

 For these reasons, we reverse the final judgment in favor of PME and remand to the circuit court for the entry of a final judgment in favor of the District.
 

 WARNER and CIKLIN, JJ., concur.
 

 [1]
 

 . PME’s theory was that Davis was involved in a conspiracy with Todd Soard and Barry Duff, competitors of PME. In a previous case, PME sued Soard and Duff for tortious interference, defamation, and civil conspiracy. Duff filed for bankruptcy before trial and PME obtained a final judgment against Soard. Soard later discharged PME's judgment in bankruptcy. The jury did not know about this background to the case or that PME filed against the District only after the bankruptcies of Soard and Duff precluded any recovery from them.
 

 [2]
 

 . We note that another panel of this court recently applied the doctrine of absolute immunity to bar an action for tortious interference with an advantageous business relationship against a City and its employees.
 
 See City of Stuart v. Monds,
 
 10 So.3d 1134 (Fla. 4th DCA 2009). This would be a separate ground supporting a judgment for the District on the tortious interference count.
 

 [3]
 

 . This case does not fall within the exception to the general rule, where no civil wrong is the object of the conspiracy, but "the mere force of numbers, acting in unison, or other exceptional circumstances, gives rise to an independent wrong. In such cases the conspiracy itself becomes the gist of the action.”
 
 Liappas,
 
 47 So.2d at 583;
 
 Snipes v. W. Flagler Kennel Club, Inc.,
 
 105 So.2d 164, 165 (Fla. 1958).