DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VOLVO AERO LEASING, LLC,**
Appellant,

v.

**VAS AERO SERVICES, LLC** f/k/a **VOLVO AERO SERVICES CORP.,** a
Delaware limited liability company, and **H.I.G. CAPITAL, LLC,** a
Delaware limited liability company,
Appellees.

Nos. 4D17-2618 and 4D17-3531

[March 13, 2019]

Consolidated appeals and cross-appeal from the Circuit Court for the
Fifteenth Judicial Circuit, Palm Beach County; Donald W. Hafele, Judge;
L.T. Case No. 50-2014-CA-003164-XXXX-MB.

Alec H. Schultz, Derek E. León, and Jennifer R. Zinn of León Cosgrove
LLP, Coral Gables, for appellant.

Ceci C. Berman and Joseph T. Eagleton of Brannock & Humphries,
Tampa, Kenneth J. Ronan of Lavalle, Brown & Ronan, P.A., Boca Raton,
and Charles Wender of Charles Wender Attorney at Law, Chartered, Boca
Raton, for appellees Vas Aero Services, LLC, and H.I.G. Capital, LLC.

LEVINE, J.

Appellant claims that the trial court erred in denying several claims
against the appellees, including its claim of tortious interference with a
business relationship. We find that appellee H.I.G. Capital was not a
"stranger to the business relationship" and thus could not be held liable
for tortious interference. We further find that the other issues on direct
appeal are without merit and affirm those issues without further
discussion.

As to the cross-appeal, we also find that the trial court did not err in
granting partial summary judgment on the breach of contract claim as to
the issue of damages. All parties agreed there was a breach of contract.
Only the amount of damages remained to be determined. The cross-
appellant did not produce any evidence to counter the affidavit and

supporting documents filed in support of the motion for summary judgment. The law is clear that to defeat a motion for summary judgment supported by competent evidence, the opposing party must present evidence—not merely argument—to create an issue of material fact. Cross-appellant merely asserted there was an issue as to the amount of damages. That is not enough. We also affirm the remaining issues raised on cross-appeal.

Volvo Aero Leasing ("VAL") leased aviation products, while VAS Aero Services, formerly known as Volvo Aero Services ("VAS"), sold aviation products. VAS originally established VAL in 2000 to provide leasing services. Subsequently, VAL was transferred to Volvo Financial Services, while VAS remained a Volvo Group company until 2010 when AB Volvo, the parent company of Volvo Group, decided to get out of the aviation business.

In 2010, VAL and VAS entered into a transaction support agreement ("TSA") to facilitate the purchase of equipment by VAS from VAL when the equipment was returned at the end of a lease by third parties. VAL would provide VAS advanced notice when equipment was coming off lease. VAS then would inspect the equipment to determine the condition of each item. If the equipment was returned in the required condition, VAS would then purchase the equipment for a pre-negotiated residual value. An exhibit to the TSA included an agreed residual value that was "calculated on a per item basis" and subject to casualty loss, early termination, or term extension. The TSA required VAS to remit the purchase price for each item within thirty days of receiving an invoice or the equipment.

On the same date as the TSA, a purchase agreement ("PA") memorialized the sale of VAS by Aero Holdings to Vas Aero Holdings. The PA provided that when VAS purchased assets leased by SR Technics ("SRT") pursuant to the TSA, the fair market value of the assets would be determined by either mutual agreement or by an appraisal process as set forth in the PA. If the fair market value was less than the agreed residual value, then VAL had to compensate VAS for the difference.

Three months after the creation of the TSA and PA, VAS entered into a management service agreement ("MSA") with H.I.G. Capital. Pursuant to the MSA, H.I.G. was to provide management, consulting, and financial advisory services to VAS for a yearly fee of $600,000.

In 2014, VAL filed a complaint against VAS and later added H.I.G. as a defendant. VAL alleged that VAS failed to purchase certain equipment under the TSA: a Boeing 737 airplane, two reverse thrusters, and two sets

of equipment coming off lease from SRT in 2012 and 2013. VAL raised claims for breach of contract against VAS (count I), conversion by VAS (count II), civil theft by VAS (count III), accounting as to VAS (count IV), tortious interference with business relationship as to H.I.G. (count V), civil conspiracy as to H.I.G. and VAS (count VI), and replevin as to VAS (count VII).

As to the tortious interference claim, VAL claimed that H.I.G. used its control over VAS to prevent VAS from satisfying its contractual obligations. In its amended answer and affirmative defenses, VAS denied VAL's allegations that H.I.G. refused to allow VAS to make any payments to VAL to satisfy VAS's contractual obligations.

VAL moved for summary judgment on the breach of contract claim, alleging it was undisputed that VAS breached the TSA. VAL alleged that the principal amount owed for the 2012 and 2013 SRT returns and the reverse thrusters was $4,786,786. In support, VAL submitted an affidavit from its president setting forth the amount of principal and interest for each claim. In further support of summary judgment, VAL submitted copies of invoices and documents containing residual values. VAL also submitted a deposition from VAS's CFO and COO authenticating invoices and documents containing residual value amounts.

VAS opposed summary judgment, arguing that VAL's summary judgment evidence was insufficient and that the amount of damages remained in dispute. VAS argued that under the TSA, VAS had the ability to dispute the amount due and owing, to pay less depending upon the condition in which the equipment was returned, and to have a different set of rules apply for items returned before the expiration of the lease.

The trial court granted summary judgment as to liability and damages for the 2012 and 2013 SRT returns and the reverse thrusters. The court found damages in the amount of $4,786,786, representing the "undisputed" amount of principal payments due to VAL pursuant to the terms of the contract.

During a bench trial on the remaining claims, VAS presented evidence that H.I.G. and VAS were both within the "H.I.G. family tree." The two individuals at the top of the VAS "ownership chain" owned 100% of the voting shares of H.I.G., and an H.I.G. affiliate owned 88% of the holding company that owned VAS. H.I.G. and VAS had a "common economic interest" and had the "same ultimate shareholders." In addition to receiving yearly compensation, H.I.G. would be entitled to additional compensation if VAS were sold. H.I.G. had also assisted in drafting the

3

TSA, which provided that H.I.G. was entitled to a copy of any notice VAL sent to VAS. VAS also introduced evidence that it did not have sufficient funds to pay all of its obligations, so it had to prioritize which payments to make. The board of directors collectively decided not to pay VAL. Although some members of the board were affiliated with H.I.G., others were not.

The trial court rejected VAL's tortious interference claim, finding that H.I.G. was not a stranger to the business relationship between VAL and VAS. H.I.G. indirectly owned and directly controlled VAS. Additionally, H.I.G. had a significant financial interest in VAS. The court concluded that H.I.G. acted with a supervisory interest in how the relationship between VAS and VAL was conducted when it caused VAS to stop payments to VAL.

The court awarded VAL $4,786,786 for breach of contract regarding the 2012 and 2013 SRT returns and the reverse thrusters. The court further awarded VAL $1,362,521, which was the difference between the residual amount of $4,462,521 and the $3.1 million resale price for the Boeing 737 aircraft. This appeal ensued.

"When a decision in a non-jury trial is based on findings of fact from disputed evidence, [we review it] for competent, substantial evidence." *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008). "However, where a trial court's conclusions following a non-jury trial are based upon legal error, the standard of review is *de novo*." *Id.*

VAL argues that the trial court erred in finding H.I.G. not liable for tortious interference with the TSA between VAL and VAS. According to VAL, H.I.G. admitted in its amended answer that it told VAS not to pay VAL.

In order to establish tortious interference with a business relationship, the plaintiff must prove: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999). Critically to this claim, "[f]or the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Id.* at 386.

The evidence did not show an "intentional and unjustified interference" with a business relationship. *See id.* at 385. Rather, the evidence showed

4

that VAS did not have sufficient funds to pay all of its bills, so VAS had to prioritize what payments it should make. VAS's board of directors collectively decided not to pay VAL.

Even if H.I.G. had caused the non-payment, "a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).

Clearly, H.I.G. had both a supervisory and financial interest in VAS. The trial court determined, and the record showed, that H.I.G. indirectly owned VAS and directly controlled VAS. H.I.G. also had a significant financial interest in VAS. H.I.G. provided management, consulting, and financial advisory services to VAS. H.I.G. received yearly compensation for its services and would be entitled to additional compensation if VAS were sold. H.I.G. assisted in drafting the TSA and was also to receive a copy of any notice VAL sent to VAS. Further, VAS and H.I.G. had common economic interests and shared the "same ultimate shareholders." Two of the owners of VAS also owned 100% of the voting shares of H.I.G., and an H.I.G. affiliate owned 88% of the holding company that also owned VAS. *See Babson Bros. Co. v. Allison*, 337 So. 2d 848, 850 (Fla. 1st DCA 1976) (holding that corporation that did not own stock in another corporation had privilege to interfere with contract where the stockholders of the first corporation owned the stock of the second corporation and "all of the stock of the two corporations was held by two families").

Suffice it to say that there was competent substantial evidence showing that the relationship between H.I.G. and VAS gave rise to the privilege for H.I.G. to involve itself in the business relationship between VAS and VAL. Clearly, there was competent substantial evidence to demonstrate that H.I.G. was not a stranger to the business relationship.

As to the cross-appeal, we find that the trial court did not err. We affirm on all the issues raised, but we write to discuss why the trial court did not err in granting partial summary judgment as to the amount of damages for the breach of contract claim made by VAL.

We review this order granting a summary judgment utilizing the de novo standard of review. *Eco-Tradition, LLC v. Pennzoil-Quaker State Co.*, 137 So. 3d 495, 496 (Fla. 4th DCA 2014).

In this case, the only contested issue was the amount of damages. Both

5

sides conceded there was a breach of contract and that VAS owed money to VAL. The only question that remained was the amount of damages.

The party moving for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact. *Landers v. Milton,* 370 So. 2d 368, 370 (Fla. 1979). Once the movant tenders competent evidence, "the opposing party must come forward with counterevidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist." *Id.*

VAL met its burden by submitting (1) a sworn affidavit from its president listing the amount of all its "claims" or damages; (2) invoices and documents listing the residual value of the SRT 2012 and 2013 returns as well as the reverse thrusters; and (3) the deposition of VAS's CFO and COO which reflected that the invoices and documents containing the residual value amounts were authenticated.

VAS, on the other hand, did not submit any affidavits or other counterevidence on the question of damages. Instead, it merely asserted that an issue existed as to the amount of damages and made only a generic reference to the terms of the TSA which allowed for an adjustment of the pre-negotiated residual values. However, the TSA also required VAS to remit the purchase price for each item within thirty days of receiving an invoice or the equipment. VAS did not challenge the residual price upon receiving any invoices or equipment, nor did VAS specifically contest the residual price and subsequent damages with evidence at the time of summary judgment. VAS did not present any evidence that it sought to challenge the amount due on the ground that the equipment was returned before the lease expired or that the equipment was not returned in the required condition. Simply put, VAS never presented evidence of attempting to adjust the pre-negotiated residual value as agreed to in the TSA. Thus, VAS neither disputed the amount due either according to the terms of the TSA, nor later by counterevidence at summary judgment.

One cannot defeat a motion for summary judgment by merely stating there is a material issue of fact or by generically referencing the existence of a contract. *See Landers,* 370 So. 2d at 370. Rather, the opposing party must show, with counterevidence, that there is a material issue of fact. *See BK Marine Constr., Inc. v. Skyline Steel, LLC,* 231 So. 3d 469, 472 (Fla. 4th DCA 2017) (finding issues of material fact remained as to the amount of damages where moving party submitted invoices and opposing party filed deposition transcript stating that it was unclear which invoices corresponded to contract); *R. Plants, Inc. v. Dome Enters., Inc.,* 221 So. 3d 752, 754 (Fla. 3d DCA 2017) (affirming summary judgment where motion

6

included affidavit with the damages plaintiff suffered and defendant did not produce counterevidence on the amount of damages); *Ins. Co. of N. Am. v. Julien P. Benjamin Equip. Co.,* 481 So. 2d 511 (Fla. 1st DCA 1985) (finding no genuine issue of material fact as to damages where opposing party did not file any countervailing affidavits or otherwise controvert the assertions in the affidavit filed in support of the motion for summary judgment and the attached invoices).

The obligation to present specific counterevidence is especially important here, where there was no dispute that there was a breach of contract, and the contract contained pre-negotiated residual values. VAS cannot complain where it conceded it breached a contract with pre-set remedies, but it did not present any evidence contesting the affidavits and other documents submitted in support of the motion for summary judgment.

The dissent relies on a deposition excerpt wherein VAS's CFO referred to a range of $2 to $3 million dollars in damages, excluding the Boeing 737. The dissent argues that this figure is "considerably less" than the $4,786,786 judgment granted. Initially, VAS never relied on this deposition testimony as counterevidence to establish a specific amount owed. *See Pensacola Beach Pier, Inc. v. King,* 66 So. 3d 321, 326 (Fla. 1st DCA 2011) (finding argument not raised in response to motion for summary judgment or in motion for rehearing was not preserved for appeal). Further, the deposition testimony was not sufficient to reveal a genuine issue of material fact. The dissent neglects to include that the CFO gave this estimate in response to a question asking for the amount due "without pinning you down to a precise dollar amount." Additionally, during same line of questioning, the CFO also estimated damages in the range of $6 to $8 million, minus approximately $4 million for the aircraft. So even within the same deposition relied upon by the dissent, the CFO testified to a damage figure close to the amount granted by the summary judgment.

In conclusion, we find the trial court was correct in this case on the appeal as well as on the cross-appeal. As such, we affirm on all issues.

*Affirmed.*

DAMOORGIAN, J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring in part and dissenting in part.

7

I agree with the majority opinion except as to the affirmance of the partial summary judgment on damages, which was the subject of VAS's cross-appeal. There were disputed issues of fact as to the amount of the damages, revealed in VAL's filings in support of summary judgment. For instance, the contract itself provides an extensive process to determine the amounts due to VAL, after the lease expiration or termination on the equipment. The invoices from VAL to VAS do not establish that this process was followed. And VAL submitted the deposition of the Chief Financial Officer of VAS, in which he testified that what VAS owed to VAL, minus the amount for the Boeing 737, was more in the range of $2 to $3 million, considerably less than the $4,786,786 the court awarded. The CFO stated that, in addition to VAS's cash problems, the invoices from VAL were not paid because there was an ongoing disagreement as to what was due. Because VAL's own submissions showed that the amount of payment was disputed, summary judgment as to the amount of damages should not have been granted.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***