**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-13297

————————————

AL RUSHAID PETROLEUM INVESTMENT COMPANY,
AL RUSHAID TRADING COMPANY,

*Plaintiffs-Appellants,*

*versus*

SIEMENS ENERGY INCORPORATED,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-02062-WWB-EJK

————————————

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This diversity jurisdiction case arises out of a dispute between two Saudi Arabian companies involved in the business of helping foreign companies gain access to the rich Saudi Arabian

market -- Al Rushaid Petroleum Investment Company ("ARPIC") and Al Rushaid Trading Company ("ARTC") (collectively, "Al Rushaid") -- and Siemens Energy, Inc. ("Siemens"), a large manufacturer of, among other things, steam and gas turbines. Siemens acquired Dresser Rand Group ("DRG"), another company involved in manufacturing gas turbines, that had earlier contracted with ARPIC and ARTC. Siemens then, allegedly, cut both ARPIC and ARTC out of various contracts and deals they say they should have been part of. Al Rushaid sued Siemens in the Middle District of Florida for tortious interference, unfair competition, and unjust enrichment. The district court dismissed all of the claims without prejudice. On appeal to our Court, Al Rushaid asserts that the district court erred across the board in dismissing each claim.

After thorough review, and with the benefit of oral argument, we remain unconvinced. First, because Siemens owned DRG and thus had supervisory and financial interests in DRG at the critical time the alleged tortious conduct occurred, Siemens was not a stranger to the contracts and business relationships at issue, as is required to sustain a claim for tortious interference under Florida law. What's more, the unfair competition claim is an impermissible "shotgun pleading," and also fails to allege the necessary elements of unfair competition. Finally, the unjust enrichment claim fails to meet minimum pleading standards. Accordingly, we affirm the district court's judgment in all respects.

## I.

The following factual allegations are drawn from the operative Amended Complaint, whose well-pleaded allegations we are

required to accept as true as we address the Motion to Dismiss. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam) (citing *Monzon v. United States*, 253 F.3d 567, 569–70 (11th Cir. 2001) (per curiam)).

For more than forty years, Al Rushaid Petroleum Investment Company and Al Rushaid Trading Company have helped foreign manufacturers of oilfield equipment gain access to the lucrative oil and gas market in Saudi Arabia. Over thirty years ago, ARTC entered into a Sales Representation Agreement with Dresser-Rand International B.V. ("DRIBV"), whereby ARTC became the exclusive agent in Saudi Arabia for the sale of Dresser Rand Group ("DRG") products, such as turbines and compressors used in the oil and gas industry. DRIBV and ARTC also entered into an Aftermarket Sales Representation Agreement, which granted ARTC the exclusive right to solicit orders in Saudi Arabia for "field service, repairs[,] and spare parts" related to the DRG products covered by the Sales Representation Agreement.

In March 2009, ARTC, in its role as finder, secured for DRG a lucrative contract with the Saudi Arabian Oil Company ("Saudi Aramco"). Under the terms of this Corporate Procurement Agreement, DRG was required to enter into a joint venture with an Al Rushaid entity, and the joint venture was required to construct a facility in Saudi Arabia to perform various tasks, including fulfilling purchase orders for products like steam turbines. DRG asked ARPIC to be its partner in the joint venture, and ARPIC and a DRG affiliate entered into a Business Venture Agreement. This

agreement was amended in April 2013 by ARPIC and the DRG affiliate. At the same time, DRG and ARTC adopted an Addendum to the Sales Representation Agreement, which increased ARTC's commission rate for certain products and confirmed that ARTC was owed commissions for previous sales it made to Saudi Aramco.

In 2014, Siemens announced it would acquire DRG through a friendly takeover and purchase of DRG's stock, with the aims of improving Siemens' position in the oil and gas market and expanding Siemens' product line to include large steam and gas turbines, compressors, and other reciprocating equipment. Siemens completed its acquisition in mid-2015. By this time, Siemens already had a longstanding, fifteen-year sales agency relationship with Juffali, a company that, like ARTC, could facilitate the sales of DRG products in Saudi Arabia. The Amended Complaint alleges that Siemens later fulfilled purchase orders issued under the Corporate Procurement Agreement outside of the joint venture between DRG and ARPIC, which denied ARPIC its proportionate share of the related benefits. It also asserts that Siemens used the joint venture's product line and personnel, as well as ARPIC's proprietary information and trade secrets, to secure and fulfill other contracts and opportunities that fell within the joint venture's scope of business and that, but for Siemens' actions, would have been awarded to and fulfilled by the joint venture.

On December 8, 2021, Al Rushaid filed its Complaint in the United States District Court for the Middle District of Florida. The district court dismissed the original complaint, determining that it

was "an impermissible shotgun pleading"; but it also granted Al Rushaid leave to file an amended Complaint. On September 28, 2022, Al Rushaid filed the operative Amended Complaint, which alleges claims for tortious interference (Counts 1–7, 9–10), unfair competition (Count 8), unjust enrichment (Count 11).

Sometime later, the district court granted Siemens' Motion to Dismiss and dismissed the entire Amended Complaint, albeit without prejudice. The court concluded that Siemens was not "a stranger to the business relationship," which defeated Al Rushaid's tortious interference claims under Florida law. Moreover, it found that Al Rushaid had failed to allege that Siemens' actions were purely malicious or that Siemens employed improper methods; thus an exception to the "stranger" requirement did not apply. Finally, the trial court determined that only conclusory statements supported Al Rushaid's unfair competition claim, and that Al Rushaid had failed to state a claim for unjust enrichment with sufficient specificity.

This timely appeal followed.

## II.

We review the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) de novo. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997) (en banc)). In doing so, we are required to accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Hill*, 321 F.3d at 1335 (citing *Monzon*, 253 F.3d at 569–70). A complaint, however, "must

plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient; the plaintiff[] must state a claim to relief that is plausible on its face." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (alteration in original) (quoting *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339–40 (11th Cir. 2017)).

Al Rushaid claims on appeal that: (1) the district court improperly dismissed its tortious interference claims, because Siemens was a stranger to the business relationship, or, in the alternative, because the "malice" and "improper means" exceptions apply; (2) the district court erred when it dismissed ARPIC's unfair competition claim, because Siemens and ARPIC compete for the same pool of customers and the claim is clear and definitive; and (3) the district court incorrectly dismissed ARTC's unjust enrichment claim, since pleading both direct and vicarious theories of liability is permitted.

## A.

We begin with Al Rushaid's tortious interference claims. As pleaded, these claims fail as a matter of law because Siemens was neither a stranger to the business relationship nor a stranger to the contracts between Al Rushaid and DRG and its affiliates. And further, Al Rushaid has failed to allege that any exception to this rule recognized in Florida applies.

Under controlling Florida law, which governs in this diversity jurisdiction claim, commenced in federal court pursuant to 28 U.S.C. § 1332, a prima facie case of tortious interference requires

23-13297                Opinion of the Court                7

establishing four basic elements: (1) "the existence of a business relationship or contract"; (2) "knowledge of the business relationship or contract on the part of the defendant"; (3) "an intentional and unjustified interference with the business relationship or procurement of the contract's breach" by the defendant; and (4) "damage to the plaintiff as a result of the interference." *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985) (per curiam)); *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976) ("[T]ortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship.").

It is the third element that is at issue today. "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)); *see also Abruzzo v. Haller*, 603 So. 2d 1338, 1339–40 (Fla. 1st DCA 1992); *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986). Under Florida law, "a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Pro. Med. Educ.*, 13 So. 3d at 1094.

As pled in the Amended Complaint, Siemens was not a stranger to the business relationship between Al Rushaid and DRG and its affiliates because Siemens' ownership of DRG gave it either a supervisory interest in how the business relationship between DRG and Al Rushaid was conducted, or a financial interest in how the contract between DRG and Al Rushaid was performed.

Florida law makes this point crystal clear. Thus, for example, in *Volvo Aero Leasing, LLC v. VAS Aero Services, LLC*, 268 So. 3d 785 (Fla. 4th DCA 2019), two companies, Volvo Aero Leasing and Volvo Aero Services, entered into a business relationship. *Id*. at 788. Volvo Aero Services and a third company, H.I.G. Capital, subsequently entered into a separate contract, under which terms H.I.G. would provide various services. *Id*. Notably, "an H.I.G. affiliate owned 88% of the holding company that owned [Volvo Aero Services]," and "[t]he two individuals at the top of the [Volvo Aero Services] 'ownership chain' owned 100% of the voting shares of H.I.G." *Id*. at 789. When Volvo Aero Leasing later sued H.I.G. for tortious interference with business relationship, claiming that H.I.G. prevented Volvo Aero Services from satisfying its contractual obligations, Florida's Fourth District Court of Appeal determined that H.I.G. was not a stranger to the business relationship, since H.I.G. indirectly owned and directly controlled Volvo Aero Services; it thus had both a supervisory and financial interest in VAS. *Id*. at 790. As a result, H.I.G. could not be held liable for tortious interference. *Id*. at 787.

This case also involves companies with preexisting business relationships or contracts (Al Rushaid and DRG) and a third-party company's ownership interest in one of those parties to the preexisting business relationship or contract (Siemens' complete ownership of DRG). It also features allegations of tortious interference against Siemens, the entity that owns DRG. Notably, Al Rushaid alleges that Siemens had a direct ownership interest in DRG, so Siemens is even less of a stranger to the business relationship than H.I.G. was in *Volvo Aero Leasing*, whose affiliate owned only 88% of the company that owned Volvo Aero Services. In short, under Florida law, Al Rushaid has failed to plead a claim for tortious interference, because it has not plausibly alleged that Siemens is a stranger to this business relationship.

We are unpersuaded by Al Rushaid's argument that Siemens was a stranger to the business relationship or contract because it acquired DRG only after Al Rushaid had entered into a series of contracts and business relationships with DRG. Florida's case law has unambiguously established that the relevant time for determining whether a defendant is a stranger to a business relationship is when the alleged tortious conduct occurred -- not the time when the business relationship or contract was initiated. Thus, for example, in *Bridge Financial, Inc. v. J. Fischer & Associates, Inc.*, 310 So. 3d 45 (Fla. 4th DCA 2020), Florida's Fourth District Court of Appeal observed that "[b]ecause the former officer 'was admittedly a ten percent owner in [the company] (a party to the business relationships or contracts) *at the time he allegedly interfered*, [he] therefore could not have been a stranger.'" *Id*. at 50 (second alteration in

original) (emphasis added) (quoting *ULQ, LLC v. Meder*, 666 S.E. 2d 713, 720 (Ga. Ct. App. 2008)).  Similarly, in *Volvo Aero Leasing*, the court affirmed the trial court's determination that the defendant company "acted with a supervisory interest in how the relationship between [two companies] was conducted *when it caused*" one company to stop payments to the other.  268 So. 3d at 789–90 (emphasis added)).

Although Al Rushaid entered into contracts with DRG long before Siemens became involved, those contracts were still operative at the time of Siemens' takeover of DRG, and Siemens' actions allegedly subverting those contracts occurred after its acquisition of DRG had been consummated.  Because Siemens acquired DRG and only then allegedly interfered with DRG and Al Rushaid's business relationship, Siemens was not a "stranger" to the contracts at issue.

Furthermore, Al Rushaid has failed to sufficiently plead one of the recognized exceptions to the "stranger" requirement.  Generally, if a defendant is not a stranger to the business relationship, then its interference cannot satisfy the third element of a prima facie case for tortious interference.  *See Pro. Med. Educ.*, 13 So. 3d at 1094.  However, a non-stranger's conduct still may be actionable in a tortious interference claim in two situations: (1) if improper means are employed, *see Sec. Title Guarantee Corp. of Balt. v. McDill Columbus Corp.*, 543 So. 2d 852, 855 (Fla. 2d DCA 1989); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980); or (2) if the motive for the actions "is purely malicious and not coupled with any

legitimate competitive economic interest," *Heavener, Ogier Servs., Inc. v. R.W. Fla. Region, Inc.*, 418 So. 2d 1074, 1077 (Fla. 5th DCA 1982).

"Improper means" include "the use of threats, intimidation and conspiratorial conduct," *Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2d DCA 1995), as well as "physical violence, misrepresentations [to customers or suppliers], illegal conduct or threats of illegal conduct," *GNB, Inc. v. United Danco Batteries, Inc.*, 627 So. 2d 492, 494 (Fla. 2d DCA 1993) (Altenbernd, J., dissenting) (quoting Fla. Standard Civil Jury Instructions 7.2); *id.* at 493 (majority opinion) (per curiam) (observing that "the dissent's explanation of the applicable law is entirely correct" but disagreeing on presence of evidence supporting element of tort claim).

Al Rushaid has failed to sufficiently allege misrepresentation or undue means. Because Al Rushaid's allegations of misrepresentation sound in fraud, *see, e.g.*, Al Rushaid Br. at 30 (describing Siemens' alleged misconduct as "using fraudulent . . . means"); Siemens Br. at 26; DE 39 ¶¶ 127, 144, 154, 165, 175, 185, 197, 209, 230, 239 (alleging dishonesty or fraud for each count), they are subject to Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022) (citing *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019)). Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]his rule serves an important purpose, both in 'alerting

defendants to the "precise misconduct with which they are charged" and protecting defendants "against spurious charges of immoral and fraudulent behavior."'" *Omnipol*, 32 F.4th at 1307 (quoting *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Claims of fraud must "identify[] the who, what, when, where, and how of the fraud alleged." *Id.* (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Ziemba*, 256 F.3d at 1202). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam). Indeed, we have dismissed cases for missing a single requirement of Rule 9(b). *See, e.g.*, *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019).

The Amended Complaint does not sufficiently allege when or where the statements at issue were made. The critical allegations of misrepresentation are found in paragraph 127 of the Amended Complaint:

127.  Because Siemens Energy knows that the [Corporate Procurement Agreement] with Saudi Aramco was expressly conditioned on ARPIC's participation in the Joint Venture and the construction of the JV Facility, Siemens Energy has been falsely representing to Saudi Aramco that ARPIC has been actively involved in the Joint Venture when, in fact, (i) Siemens Energy has purposely excluded ARPIC from all aspects of the Joint Venture, and (ii) Siemens Energy has been fulfilling purchase orders issued under the CPA and the other aforementioned contracts at the Siemens Facility and denying ARPIC all related benefits.

As Al Rushaid conceded at oral argument, the Amended Complaint provides no details as to <u>when</u> Siemens allegedly made these statements.  Nor does the Amended Complaint say <u>where</u> any of these alleged misrepresentations were made.  Finally, the Amended Complaint does not articulate which specific deals or projects Al Rushaid would have been involved in, but for the alleged deception.  Because the Amended Complaint does not allege "the time and place of each such statement" or "what the defendants obtained as a consequence of the fraud," *Garfield*, 466 F.3d at 1262 (quoting *Ziemba*, 256 F.3d at 1202), as is required under Rule 9(b), Al Rushaid has not adequately pled that Siemens employed such "undue means."  Nor has Al Rushaid pled other forms of undue means, such as physical violence, threats, intimidation, illegal conduct, or threats of illegal conduct.  Similarly, the allegations in the Amended Complaint that Siemens knowingly participated in

opportunities belonging to the joint venture or that Siemens profited from alleged breaches by DRG and its affiliates do not allege undue means with sufficient particularity under Rule 9(b).

The Amended Complaint also fails to sufficiently allege that Siemens' motive was "purely malicious and not coupled with any legitimate competitive economic interest." *Heavener*, 418 So. 2d at 1077. A malicious motive is one "characterized as 'out of spite, to do harm, or for some other bad motive,'" or alternatively, where "there is a showing that the speaker used his privileged position 'to gratify his malevolence.'" *Hurchalla v. Lake Point Phase I, LLC*, 278 So. 3d 58, 66 (Fla. 4th DCA 2019) (quoting *Nodar v. Galbreath*, 462 So. 2d 803, 811 (Fla. 1984)).

In contrast, the Amended Complaint lists legitimate purposes animating the acquisition of DRG: the ability for Siemens "to reap the long-term benefits of DRG's service and repair revenues"; to increase its opportunity to "manufacture and service field equipment"; and to otherwise grow its presence in the Saudi oil and gas market. These are legitimate economic interests. *See, e.g.*, *Ethyl Corp.*, 386 So. 2d at 1222–23, 1226 (finding that Ethyl Corp acted "in the lawful protection of its legitimate interests in receiving the money it was owed and not 'solely' out of malice" when it "solicit[ed] from others . . . subsequent and more favorable offers to reorganize" despite a preexisting agreement to reorganize).

Moreover, the Amended Complaint asserts that Siemens had various other legitimate business interests, including that: "Saudi law no longer required the participation of a Saudi-based partner

in a joint venture"; "the Joint Venture had already endured the expense-laden start-up period associated with the construction of the JV Facility and was about to earn the long-awaited profits yielded by . . . service, repair, and maintenance"; that Siemens Energy had essentially integrated Dresser-Rand's products with its service line and was no longer limited to securing opportunities in Saudi Arabia. Having alleged that Siemens' actions were motivated at least in part by legitimate business reasons and not "'solely' out of malice," *id.* at 1226, Al Rushaid has failed to satisfy the "purely malicious" motive exception to the stranger-to-the-business-relationship rule, *Heavener*, 418 So. 2d at 1077; *see also McCurdy v. Collis*, 508 So. 2d 380, 383 (Fla. 1st DCA 1987) ("A qualified privilege to interfere is not negated by concomitant evidence of malice. It is only when malice is the *sole* basis for interference that it will be actionable." (citing *Ethyl Corp.*, 386 So. 2d at 1225–26)).

In sum, because Siemens was not a stranger to the business relationship, and since Al Rushaid failed to allege either that Siemens used improper means or that Siemens' actions were motivated purely by malicious considerations and were divorced from legitimate business interests, Al Rushaid's tortious interference claims fail as a matter of Florida law. The district court did not err in dismissing Counts 1–7, 9, and 10.

### B.

Next, as we see it, the district court correctly dismissed Al Rushaid's unfair competition claim too. As a preliminary matter, Count 8 of the Amended Complaint amounts to an impermissible

shotgun pleading. Although the trial court permitted Al Rushaid to file an amended pleading and warned Al Rushaid that the "[f]ailure to timely file an amended pleading in accordance with this Order may result in the dismissal of this case without further notice," Al Rushaid's Amended Complaint still impermissibly lumped together different causes of action in Count 8.

One type of shotgun pleading "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). The heading for Count 8 is "ARPIC's Common Law Unfair Competition Claim," but this count also includes a claim against Siemens for "stealing the . . . trade secrets of another." Under Florida's Uniform Trade Secrets Act, however, Al Rushaid is required to bring any trade secrets claim under that statute, not under the common law. *See* Fla. Stat. § 688.008 (2024) (stating that the Uniform Trade Secrets Act "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret"). Since Al Rushaid failed to separate its trade secrets claim from its unfair competition claim (about which it had previously been warned), the district court properly dismissed Count 8 of the Amended Complaint as an impermissible shotgun pleading.

What's more, even if Count 8 were limited just to an unfair competition claim, Al Rushaid would still have failed to adequately state a claim. A common-law claim for unfair competition under Florida law requires proving three things: (1) "actual or direct

23-13297               Opinion of the Court                    17

competition between the litigants"; (2) that the defendant used "deceptive and fraudulent conduct," such as the "use of imitative devices or other unfair means"; and (3) that the conduct caused "customer confusion" so that prospective buyers purchase the defendant's wares "under the impression they are buying those of their rivals." *Stagg Shop of Miami, Inc. v. Moss*, 120 So. 2d 39, 40–41 (Fla. 2d DCA 1960). The failure to sufficiently allege any one of these basic elements would provide grounds for dismissal of the claim. *See, e.g.*, *Tampa Wholesale Co. v. Foodtown U. S. A., Inc.*, 166 So. 2d 711, 712 (Fla. 2d DCA 1964) (dismissing unfair competition claim because of lack of actual competition).

For one thing, the Amended Complaint fails to plausibly allege that Al Rushaid and Siemens are competitors. It asserts that both ARPIC and ARTC "aid[] foreign manufacturers of oilfield equipment in gaining access to the lucrative Saudi market." In other words, ARPIC and ARTC are in the business of helping foreign companies secure contracts with Saudi entities. Meanwhile, the Amended Complaint unambiguously asserts that Siemens is a manufacturer of gas turbines and compressors. As the district court recognized, the business of facilitating sales is sharply different from the business of manufacturing gas turbine products. The product lines are plainly different. Indeed, the Amended Complaint alleges that Siemens, unlike ARPIC or ARTC, does not sell its own products. Instead, the Amended Complaint asserts that Juffali -- a Saudi-based commercial agent -- is the company that "could fill ARTC's role in effectuating the sale of DRG products in Saudi Arabia and other parts of the Middle East" -- not Siemens. If Al

Rushaid wanted to bring an unfair competition claim, it should have sued Juffali, not Siemens.

Al Rushaid also fails to plausibly plead the use of "deceptive or fraudulent conduct" by Siemens. Liberally construed, the Amended Complaint claims that Siemens made false representations to Saudi Aramco that ARPIC was involved in the joint venture when it was cut out by Siemens. But this is not the kind of conduct typically at issue in unfair competition cases, which tend to involve confusion resulting from similarity in trade names. *See, e.g.*, *Sun Coast, Inc. v. Shupe*, 52 So. 2d 805, 805–06 (Fla. 1951) (comparing defendants' use of the trade name "Suncoast Properties" with the plaintiffs' use of the name "Sun Coast Hotel and Apartments"); *Great S. Bank v. First S. Bank*, 625 So. 2d 463, 465–66 (Fla. 1993) (comparing the names of two banks, each with "Southern" in its name). The Amended Complaint does not assert that Siemens essentially pretended to be ARPIC or otherwise imitated ARPIC, so Al Rushaid has failed to satisfy this element of unfair competition too.

Finally, Al Rushaid fails to plausibly allege "customer confusion." The Amended Complaint asserts that "[b]y virtue of these misrepresentations [that ARPIC has remained actively involved in the Joint Venture], Siemens Energy has been able to continue the lucrative business relationship with Saudi Aramco, divert contracts that would have been fulfilled by the Joint Venture, . . . and deny ARPIC its proportionate share of the related benefits." The Amended Complaint never says that Saudi Aramco was "confused" or that it thought that it was dealing with ARPIC rather than with

Siemens. Indeed, the Amended Complaint never articulates any connection between Siemens' alleged misrepresentations and its continuing business with Saudi Aramco, let alone that the continuing business was the result of "customer confusion" on Saudi Aramco's part.

Because Count 8 still fails to separate its legal claims, and because the allegations in Count 8 are insufficient as a matter of law to state a claim for unfair competition, the district court correctly dismissed Count 8.

## C.

Finally, the district court properly dismissed Al Rushaid's unjust enrichment claim, because Al Rushaid failed to state a plausible claim for relief. "To state a claim for unjust enrichment, a plaintiff must allege 'a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (quoting *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

Count 11 of the Amended Complaint reads this way:

243. ARTC alleges that Siemens Energy has been unjustly enriched because it and/or entities it acquired, received, and retained the benefit of the revenues from the sale of DRG products, spare parts, and related service in Saudi Arabia generated by ARTC

without paying ARTC the substantial commissions owed for those sales.

244.  Permitting Siemens and/or entities it acquired to retain the benefit of the revenues from the sale of DRG products, spare parts, and related service generated by ARTC without paying ARTC the substantial commissions owed for those sales would unfairly give them the benefit of ARTC's property and efforts.

245.  Equity and good conscience forbid Siemens Energy and/or entities it acquired from retaining the benefit of ARTC's efforts and commissions without having fulfilled their contractual obligations to ARTC or without otherwise paying for the value thereof.

This claim was properly dismissed because it is unclear what theory of liability the Amended Complaint is articulating; it thus fails to meet the pleading standards of Federal Rule of Civil Procedure 8.  Specifically, the use of "and/or" in each of these paragraphs muddies the waters as to what kind of conduct Al Rushaid is alleging and whether it was Siemens, one or more of its entities, or both, that allegedly committed that conduct.

Although a party may plead theories in the alternative, alternative statements of a claim should be set out in multiple statements, not lumped together in one statement.  *See* Fed. R. Civ. P. 8(d)(2); *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability."

23-13297                Opinion of the Court                21

(citing *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008))).  Federal Rule of Civil Procedure 8(d)(2) says:

> *Alternative Statements of a Claim or Defense.*  A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.

Fed. R. Civ. P. 8(d)(2).

A pleading setting out alternative theories for a claim generally must have separate statements for each claim.  After all, Rule 8 permits parties to "set out 2 or more statements" that lay out their claims; it does not say that parties may lay out their claims in a single statement.  In addition, laying out each claim individually facilitates judicial review by avoiding the confusion of blurring claims together.  At all events, Al Rushaid's unjust enrichment claim lumps all of its theories of liability together, which makes it substantially more difficult to determine what theory of liability the Amended Complaint is even alleging in the first place, let alone evaluate those claims.  Because it does not separate out various theories of liability, Count 11 is not a "plain statement of the claim showing that the pleader is entitled to relief," and the district court correctly dismissed it without prejudice in light of this deficiency.  Fed. R. Civ. P. 8(a)(2).

More significantly, and independently, even if we were to try to make sense of Al Rushaid's unjust enrichment claim, on its own terms, it fails to state a claim.  Under Florida law, a plaintiff cannot pursue a claim for unjust enrichment "if an express contract exists

concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam) (citations omitted); *see also Ocean Commc'ns, Inc. v. Bubeck*,  956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) (holding that "a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists" that covers the same topic); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So. 2d 518, 520 (Fla. 3d DCA 1975) ("[A]n action seeking to enforce an express contract and also . . . accomplish the same purpose under quantum meruit is not available." (citations omitted)).

As pled in the Amended Complaint, Al Rushaid's unjust enrichment claim is based on the "contractual obligations [owed] to ARTC" -- that is, the obligations owed to ARTC under the Sales Representation Agreement and Aftermarket Sales Representation Agreement by the contracting DRG entities obtained by Siemens. Both of these contracts, Al Rushaid says, granted ARTC certain rights, including that ARTC would be the exclusive sales agent for DRG products in Saudi Arabia and granting ARTC the exclusive right to solicit orders in Saudi Arabia for field service, repairs, and spare parts for those DRG products.  It is the breach of these contractual rights -- and thus, the receipt and retention of the benefits of the revenue from the sale of DRG products under the contract -- that is at the heart of Al Rushaid's unjust enrichment claim.  Put differently, Al Rushaid's unjust enrichment claim is based entirely on matters covered by the express contracts in this case.  Accordingly, the Amended Complaint fails to state an unjust enrichment claim as a matter of law.

For all of these reasons, we affirm the judgment of the district court dismissing each of the claims without prejudice.

**AFFIRMED.**